# GUNNISON COUNTY COMMISSIONERS *v.* ROLLINS.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 178. Argued December 15, 16, 1898. — Decided February 20, 1899.

Although the bill of exceptions in this case does not state, in so many words, that it contains all the evidence, it sufficiently appears that it does contain all, and this court can inquire on this record whether the Circuit Court erred in giving a peremptory instruction for the defendant.

The recitals in the bonds of Gunnison County, the coupons of which are in suit in this case, that they were "issued by the Board of County Commissioners of said Gunnison County in exchange, at par, for valid floating indebtedness of the said county outstanding prior to September 2, 1882, under and by virtue of and in full conformity with the provisions of an act of the general assembly of the State of Colorado, entitled 'An act to enable the several counties of the State to fund their floating indebtedness,' approved February 21, 1881; 'that all the requirements of law have been fully complied with by the proper officers in the issuing of this bond;' that the total amount of the issue does not exceed the limit prescribed by the constitution of the State of Colorado, and that this issue of bonds has been authorized by a vote of a majority of the duly qualified electors of the said county of Gunnison, voting on the question at a general election duly held in said county on the seventh day of November, A.D. 1882," estop the county from asserting, against a *bona fide* holder for value, that the bond so issued created an indebtedness in excess of the limit prescribed by the constitution of Colorado.

This case is controlled by the judgment in *Chaffee County* v. *Potter*, 142 U. S. 355, which the court declines to overrule.

The plaintiff corporation was a *bona fide* holder, when this suit was brought, of some of the bonds sued for in it.

THE case is stated in the opinion.

*Mr. John F. Dillon* and *Mr. Edmund F. Richardson* for

Rollins. *Mr. Harry Hubbard* and *Mr. John M. Dillon* were on their brief.

*Mr. Charles S. Thomas* for Gunnison County Commissioners. *Mr. Thomas C. Brown*, *Mr. W. H. Bryant* and *Mr. H. H. Lee* were on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by E. H. Rollins & Sons, a corporation of New Hampshire, o obtain a judgment against the Board of Commissioners of Gunnison County, Colorado, a municipal corporation of that State, for the amount of certain coupons of bonds issued by the defendant in 1882. At the close of the evidence the defendant requested a peremptory instruction in its behalf. The Circuit Court charged the jury at some length, but concluded with a direction to find a verdict for the defendant, which was done, and a judgment in its favor was entered. That judgment was reversed in the Circuit Court of Appeals, and the case is here upon writ of certiorari. 49 U. S. App. 399.

The case made by the complaint is as follows:

By the laws of Colorado Boards of County Commissioners were authorized to examine, allow and settle all accounts against their respective counties, and to issue county warrants therefor; to build and keep in repair the county buildings, to insure the same, and to provide suitable rooms for county purposes; and to represent the county and have the care of county property and the management of the business and concerns of the county in all cases where the law did not otherwise provide.

On the 1st day of December, 1882, the defendant Board caused to be made and executed certain bonds acknowledging the county of Gunnison to be indebted and promising to pay to ———— or bearer the sum therein named, for value received, redeemable at the pleasure of the county after ten years, and absolutely due and payable twenty years after date, at the office of the county treasurer, with interest at eight per cent

per annum, payable semi-annually on the first days of March and September in each year at the county treasurer's office, or at the Chase National Bank in the city of New York, at the option of the holder, upon the presentation and surrender of the annexed coupons as they severally became due.

Each bond contained this recital: "This bond is issued by the Board of County Commissioners of said Gunnison County in exchange, at par, for valid floating indebtedness of the said county outstanding prior to September 2, 1882, under and by virtue of and in full conformity with the provisions of an act of the general assembly of the State of Colorado, entitled 'An act to enable the several counties of the State to fund their floating indebtedness,' approved February 21, 1881; and it is hereby certified that all the requirements of law have been fully complied with by the proper officers in the issuing of this bond. It is further certified that the total amount of this issue *does not exceed the limit prescribed by the constitution of the State of Colorado,* and that this issue of bonds has been authorized by a vote of a majority of the duly qualified electors of the said county of Gunnison, voting on the question at a general election duly held in said county on the seventh day of November, A. D. 1882. The bonds of this issue are comprised in three series, designated 'A,' 'B' and 'C' respectively, the bonds of series 'A' being for the sum of one thousand dollars each, those of series 'B' for the sum of five hundred dollars each and those of series 'C' for the sum of one hundred dollars each. This bond is one of series 'A.' The faith and credit of the county of Gunnison are hereby pledged for the punctual payment of the principal and interest of this bond."

To each bond were attached coupons for the semi-annual interest, signed by the county treasurer.

On the first day of December, 1882, for the bonds of the county with coupons attached as above specified, the defendant Board made an exchange with the parties then holding county warrants which before that time in accordance with the statutes in such case made and provided had been issued to them in settlement of claims presented by them against the county.

In every case when warrants were presented they were exchanged for the bonds of the county at par for their face and interest. In each case the blanks were filled out with the name of the party receiving the bonds or exchanging the warrants, and the blank for the place of payment filled in as the banking house of the Chase National Bank in the city of New York. Thereupon the bonds were signed by the chairman of the Board of County Commissioners, countersigned by the county treasurer and attested by the county clerk with the seal of the county ; and the coupons attached were also filled out, stating the place of payment to be in the city of New York at the banking house of the Chase National Bank, and stating also the number of the funding bond and the series to which it was attached.

The issue of bonds as above set forth was authorized by a vote of the qualified electors to be exchanged for warrants, and the amount thereof was spread upon the records of the county as provided for by the act of February 21, 1881, entitled "An act to enable the several counties of the State to fund their floating indebtedness." In all other respects the terms and conditions of the act were fully complied with. The bonds were duly registered in the office of the auditor of the State.

In every case where bonds were issued and delivered to the payee or to any person for him, the parties received them in exchange for warrants, the amount of the bonds being the same as the amount of the warrants and interest thereon that had theretofore been issued by the county.

From the 1st day of December, 1882, and up until the 1st day of March, 1886, the county paid the interest on the bonds semi-annually in accordance with their terms and of the coupons attached to them.

The defendant Board made default in the payment of interest due on the first day of September, 1886, and made like default thereafter up to and including September 1, 1892.

The plaintiff was the holder and owner of coupons formerly attached to and belonging to certain bonds of the above issue. It asked judgment for the aggregate amount of the principal

of the coupons, with interest on the amount of each coupon as it became due.

The answer of the county contained a general denial of all the allegations of the complaint, and in addition set out eleven affirmative defences, which were chiefly based upon the alleged fact that the county, in issuing the bonds set forth in the complaint, had attempted to incur an indebtedness not authorized by the constitution of Colorado or by the statute referred to in the bonds.

The provision of the constitution of Colorado prescribing the extent to which counties may become indebted and to which the bonds referred, is as follows :

"No county shall contract any debt by loan in any form, except for the purpose of erecting necessary public buildings, making or repairing public roads and bridges; and such indebtedness contracted in any one year shall not exceed the rates upon taxable property in such county, following, to wit : Counties in which the assessed valuation of taxable property shall exceed five millons of dollars, one dollar and fifty cents on each thousand dollars thereof. Counties in which such valuation shall be less than five millions of dollars, three dollars on each thousand dollars thereof. And the aggregate amount of indebtedness of any county for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount above herein limited, unless when in manner provided by law, the question of incurring debt shall, at a general election, be submitted to such of the qualified electors of such county as in the year last preceding such election shall have paid a tax upon property assessed to them in such county, and a majority of those voting thereon shall vote in favor of incurring the debt; but the bonds, if any be issued therefor, shall not run less than ten years, and the aggregate amount of debt so contracted shall not at any time exceed twice the rate upon the valuation last herein mentioned; provided that this section shall not apply to counties having a valuation of less than one million of dollars." Laws of Colorado, 1877, p. 62.

The act of February 21, 1881, referred to in the bonds in question, contains among other provisions the following:

"§ 1. It shall be the duty of the county commissioners of any county having a floating indebtedness exceeding ten thousand dollars, upon the petition of fifty of the electors of said counties [county] who shall have paid taxes upon property assessed to them in said county in the preceding year, to publish for the period of thirty days, in a newspaper published within said county, a notice requesting the holders of the warrants of such county to submit, in writing, to the board of county commissioners, within thirty days from the date of the first publication of such notice, a statement of the amount of the warrants of such county, which they will exchange at par, and accrued interest, for the bonds of such county, to be issued under the provisions of this act, taking such bonds at par. It shall be the duty of such board of county commissioners at the next general election occurring after the expiration of thirty days from the date of the first publication of the notice aforementioned, upon the petition of fifty of the electors of such county who shall have paid taxes upon property assessed to them in said county in the preceding year, to submit to the vote of the qualified electors of such county who shall have paid taxes on property assessed to them in said county in the preceding year, the question whether the board of county commissioners shall issue bonds of such county under the provisions of this act, in exchange at par for the warrants of such county issued prior to the date of the first publication of the aforesaid notice; or they may submit such question at a special election, which they are hereby empowered to call for that purpose at any time after the expiration of thirty days from the date of the first publication of the notice aforementioned, on the petition of fifty qualified electors as aforesaid; and they shall publish for the period of at least thirty days immediately preceding such general or special election in some newspaper published within such county, a notice that such question will be submitted to the duly qualified electors as aforesaid, at such election. The county treasurer of such county shall make out and cause to be delivered to the judges

of election in each election precinct in the county, prior to the said election, a certified list of the taxpayers in such county who shall have paid taxes upon property assessed to them in such county in the preceding year; and no person shall vote upon the question of the funding of the county indebtedness, unless his name shall appear upon such list, nor unless he shall have paid all county taxes assessed against him in such county in the preceding year. If a majority of the votes lawfully cast upon the question of such funding of the floating county indebtedness shall be for the funding of such indebtedness, the board of county commissioners may issue to any person or corporation holding any county warrant or warrants, issued prior to the date of the first publication of the aforementioned notice, coupon bonds of such county in exchange therefor, at par. No bonds shall be issued of less denomination than one hundred dollars, and if issued for a greater amount, then for some multiple of that sum, and the rate of interest shall not exceed eight per cent per annum. The interest to be paid semi-annually at the office of the county treasurer, or in the city of New York, at the option of the holders thereof. Such bonds to be payable at the pleasure of the county after ten years from the date of their issuance, but absolutely due and payable twenty years after date of issue. The whole amount of bonds issued under this act shall not exceed the sum of the county indebtedness at the date of the first publication of the aforementioned notice, and the amount shall be determined by the county commissioners, and a certificate made of the same, and made a part of the records of the county; and any bond issued in excess of said sum shall be null and void; and all bonds issued under the provisions of this act shall be registered in the office of the state auditor, to whom a fee of ten cents shall be paid for recording each bond." Laws of Colorado, 1881, pp. 85, 86, 87.

1. The Circuit Court of Appeals held that the bill of exceptions did not purport to contain all the evidence adduced at the trial, and for that reason it did not consider the question whether error was committed in directing the jury to find for the defendant. We are of opinion that the bill of exceptions

should be taken as containing all the evidence. It appears that as soon as the jury was sworn to try the issues in the cause, ".the complainants to sustain the issues on their part offered the following oral and documentary evidence." Then follow many pages of testimony on the part of the plaintiffs, when this entry appears: "Whereupon complainants rested." Immediately after comes this entry: "Thereupon the defendants to sustain the issues herein joined on their part, produced the following evidence." Then follow many pages of evidence given on behalf of the defendant, and the evidence of a witness recalled by the defendant, concluding with this entry: "Whereupon the further proceedings herein were continued until the 20th day of May, 1896, at 10 o'clock A.M." Immediately following is this entry: "Wednesday, May 20th, at 10 o'clock, the further trial of this cause was continued as follows." The transcript next shows some discussion by counsel as to the exclusion of particular evidence, after which is this entry: "Thereupon counsel for defendant made a formal motion under the evidence on both sides that the court instruct the jury to return a verdict for the defendant." Although the bill of exceptions does not state, in words, that it contains all the evidence, the above entries sufficiently show that it does contain all the evidence. It is therefore proper to inquire on this record whether the Circuit Court erred in giving a peremptory instruction for the defendant.

2. We have seen that the bonds to which were attached the coupons in suit recited that they were issued by the Board of County Commissioners "in exchange at par for valid floating indebtedness of the county outstanding prior to September 2, 1882, under and by virtue of and in full conformity with the provisions of an act of the General Assembly of the State of Colorado, entitled 'An act to enable the several counties of the State to fund their floating indebtedness,' approved February 21, 1881;" that "all the requirements of law have been fully complied with by the proper officers in the issuing of this bond;" that the total amount of the issue did "not exceed the limit prescribed by the constitution of the State of Colorado;" and that such issue had been authorized by a vote

of a majority of the duly qualified electors of the county, voting on the question at a general election duly held in the county on the 7th day of November, 1882.

Do such recitals estop the county from asserting against a *bona fide* holder for value that the bonds so issued created an indebtedness in excess of the limit prescribed by the constitution of Colorado? An answer to this question can be found in former decisions of this court. It is necessary to advert to those decisions, particularly those in which the court considered the effect of recitals importing compliance with constitutional provisions.

In *Buchanan* v. *Litchfield*, 102 U. S. 278, 290, 292, which was a suit on interest coupons of municipal bonds, the defence was made that the bonds were issued in violation of that clause of the constitution of the State providing that "no county, city, township, school district or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness." This court said: "As, therefore, neither the constitution nor the statute prescribed any rule or test by which persons contracting with municipal corporations should ascertain the extent of their 'existing indebtedness,' it would seem that if the bonds in question had contained recitals which, upon any fair construction, amounted to a representation upon the part of the constituted authorities of the city that the requirements of the constitution were met — that is, that the city's indebtedness, increased by the amount of the bonds in question, was within the constitutional limit — then the city, under the decisions of this court, might have been estopped from disputing the truth of such representations as against a *bona fide* holder of its bonds. The case might then, perhaps, have been brought within the rule announced by this court in *Town of Coloma* v. *Eaves*, 92 U. S. 484, in which case we said, and now repeat, that 'where legislative authority has been given to a municipality, or to its officers, to subscribe for the

stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with, their recital that it has been, made on the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal.' So, in the more recent case of *Orleans* v. *Pratt*, 99 U. S. 676, it was said that 'where the bonds on their face recite the circumstances which bring them within the power, the corporation is estopped to deny the truth of the recital.'" Again: "A recital that the bonds were issued under the authority of the statute and in pursuance of the city ordinance, did not necessarily import a compliance with the constitution. Had the bonds made the additional recital that they were issued in accordance with the constitution, or had the ordinance stated, in any form, that the proposed indebtedness was within the constitutional limit, or had the statute restricted the exercise of the authority therein conferred to those municipal corporations whose indebtedness did not, at the time, exceed the constitutional limit, there would have been ground for holding that the city could not, as against the plaintiff, dispute the fair inference to be drawn from such recital or statement as to the extent of its existing indebtedness."

In *Northern Bank of Toledo* v. *Porter Township*, 110 U. S. 608, 616, 619, which was an action on municipal bonds, and involved a question respecting the conclusiveness as between the municipality and a *bona fide* holder for value of recitals in the bonds that they had been issued in conformity to law, the court referred to the above rule established in *Town of Coloma* v. *Eaves*, and said: "We are of opinion that the rule as thus stated does not support the position which counsel for plaintiff in error take in the present case. The adjudged cases, examined in the light of their special circumstances, show that the facts which a municipal corporation, issuing bonds in aid of the construction of a railroad, was not permitted, against a

*bona fide* holder, to question, in face of a recital in the bonds of their existence, were those connected with or growing out of the discharge of the ordinary duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued; not merely for themselves, as the ground of their own action, but, equally, as authentic and final evidence of their existence, for the information and action of all others dealing with them in reference to it. . . . The question of legislative authority in a municipal corporation to issue bonds in aid of a railroad company cannot be concluded by mere recitals; but the power existing, the municipality may be estopped by recitals to prove irregularities in the exercise of that power; or, when the law prescribes conditions upon the exercise of the power granted, and commits to the officers of such municipality the determination of the question whether those conditions have been performed, the corporation will also be estopped by recitals which import such performance."

A leading case on this subject is *Dixon County* v. *Field,* 111 U. S. 83, 92–94, which involved the validity of bonds issued in the name of Dixon County, Nebraska, the constitution of which State prescribed conditions upon which donations could be made to a railroad or other work of internal improvement by cities, towns, precincts, municipalities or other subdivisions of the State, and imposed limitations upon the amount thereof and upon the mode of creating municipal debts of that kind. The principal question was as to the conclusiveness of certain recitals in the bonds sued on in that case. This court said: " The estoppel does not arise, except upon matters of fact which the corporate officers had authority by law to determine and to certify. It is not necessary, it is true, that the recital should enumerate each particular fact essential to the existence of the obligation. A general statement that the bonds have been issued in conformity with the law will suffice, so as to embrace every fact which the officers making the statement are authorized to determine and certify. A determination and statement as to the whole series, where more than one is

involved, is a determination and certificate as to each essential particular. But it still remains that there must be authority vested in the officers, by law, as to each necessary fact, whether enumerated or non-enumerated, to ascertain and determine its existence, and to guarantee to those dealing with them the truth and conclusiveness of their admissions. In such a case the meaning of the law granting power to issue bonds is, that they may be issued, not upon the existence of certain facts, to be ascertained and determined whenever disputed; but upon the ascertainment and determination of their existence, by the officers or body designated by law to issue the bonds upon such a contingency. This becomes very plain when we suppose the case of such a power granted to issue bonds, upon the existence of a state of facts to be ascertained and determined by some persons or tribunal other than those authorized to issue the bonds. In that case, it would not be contended that a recital of the facts in the instrument itself, contrary to the finding of those charged by law with that duty, would have any legal effect. So, if the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be, that the authority to act at all depended upon the actual objective existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow, that all persons claiming under the exercise of such a power might be put to proof of the fact, made a condition of its lawfulness, notwithstanding any recitals in that instrument. This principle is the essence of the rule declared upon this point, by this court, in the well-considered words of Mr. Justice Strong, in *Coloma* v. *Eaves*, 92 U. S. 484, where he states (p. 491) that it is, 'where it may be gathered from the legislative enactment that the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with,' that 'their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclu-

sive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal.' The converse is embraced in the proposition and is equally true. If the officers authorized to issue bonds, upon a condition, are not the appointed tribunals to decide the fact, which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words, where the validity of the bonds depends upon an estoppel, claimed to arise upon the recitals of the instrument, the question being as to the existence of power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals and to make them conclusive. The very ground of the estoppel is that the recitals are the official statements of those to whom the law refers the public for authentic and final information on the subject."

In *Lake County* v. *Graham*, 130 U. S. 674, 680, 683–684, the question was as to the validity of certain bonds issued by Lake County, Colorado, under the very statute of that State referred to in the bonds the coupons of which are here in suit, namely, the above act of February 21, 1881, authorizing the several counties of the State to fund their floating indebtedness. It was recited in each of the bonds sued on in that case that they were issued under and by virtue of and in full compliance with that act, and that "all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond." No one of the bonds, let it be observed, contained any recital that it was issued in conformity to the provisions of the state constitution. This court said: "Nothing is better settled than this rule—that the purchaser of bonds, such as these, is held to know the constitutional provisions and the statutory restrictions bearing on the question of the authority to issue them; also the recitals of the bonds he buys; while, on the other hand, if he act in good faith and pay value, he is entitled to the protection of such recitals of facts as the bonds may contain. In this case the constitution charges each purchaser with knowledge of the fact that, as to all counties whose assessed valuation equals one million of dollars, there is a

maximum limit beyond which those counties can incur no further indebtedness under any possible conditions, provided, that in calculating that limit, debts contracted before the adoption of the constitution are not to be counted. The statute, on the other hand, charges the purchaser with knowledge of the fact that the county commissioners were to issue bonds, at par, in exchange for such warrants of the county as were themselves issued prior to the date of the first publication of the notice provided for; that the only limitation on the issue of bonds in the statute was, that the bonds should not exceed in amount the sum of the county indebtedness on the day of notice aforesaid; that while the commissioners were empowered to determine the amount of such indebtedness, yet the statute does not refer that board, for the elements of its computation, to the constitution or to the standards prescribed by the constitution, but leaves it open to them, without departing from any direction of the statute, to adopt solely the basis of the county warrants. The recitals of the bonds were merely to the effect that the issue was ' under, and by virtue of, and in full compliance with,' the *statute;* ' that all the provisions and requirements *of said act* have been fully complied with by the proper officers in the issuing of this bond;' and that the issuing was 'authorized by a vote of a majority of the duly qualified electors,' etc.; no express reference being made to the constitution, nor any statement made that the constitutional requirements had been observed. There is, therefore, no estoppel as to the *constitutional* question, *because there is no recital in regard to it. Carroll County* v. *Smith,* 111 U. S. 556." In disposing of the contention that, under the doctrines of certain adjudged cases, the county was estopped to deny that the bonds were issued in conformity to the constitution, the court said: "The question here is distinguishable from that in the cases relied on by counsel for defendant in error. In this case the standard of validity is created by the constitution. In that standard two factors are to be considered; one the amount of assessed value, and the other the ratio between that assessed value and the debt proposed. These being exactions of the constitution itself,

it is not within the power of a legislature to dispense with them, either directly or indirectly, by the creation of a ministerial commission whose finding shall be taken in lieu of the facts. In the case of *Sherman County* v. *Simons*, 109 U. S. 735, and others like it, the question was one of estoppel as against an exaction imposed by the legislature; and the holding was, that the legislature, being the source of exaction, had created a board authorized to determine whether its action had been complied with, and that its finding was conclusive to a *bona fide* purchaser. So also in *Oregon* v. *Jennings*, 119 U. S. 74, the condition violated was not one imposed by the constitution, but one fixed by the subscription contract of the people."

This brings us in our reference to the authorities to the important case of *Chaffee County* v. *Potter*, 142 U. S. 355, 363, 364, 366. That was an action upon coupons of bonds issued by Chaffee County, Colorado, under the act of February 21, 1881, under which the bonds here in suit were issued. The bonds and coupons were in the same form and contained the *same recitals* as the above bonds issued by Gunnison County, and were of like date. The defence in part in the *Chaffee County case* was that the bonds, and each of them, were issued in violation of the constitution of the State. After referring to the decision in *Lake County* v. *Graham* (the bonds in which did not contain any express recitals as to the constitutional limit of indebtedness), and stating that it was based largely on the ruling in *Dixon County* v. *Field*, this court said: "To the views expressed in that case we still adhere; and the only question for us now to consider, therefore, is: Do the additional recitals in these bonds, above set out, and in the absence from their face of anything showing the total number issued of each series, and the total amount in all, estop the county from pleading the constitutional limitation? In our opinion these two features are of vital importance in distinguishing this case from *Lake County* v. *Graham* and *Dixon County* v. *Field*, and *are sufficient to operate as an estoppel against the county*. Of course, the purchaser of bonds in open market was bound to take notice of

the constitutional limitation on the county with respect to indebtedness which it might incur. But when, upon the face of the bonds, there was any express recital that the limitation had not been passed, and the bonds themselves did not show that it had, he was bound to look no further. An examination of any particular bond would not disclose, as it would in the *Lake County* case, and in *Dixon County* v. *Field*, that, as a matter of fact, the constitutional limitation had been exceeded, in the issue of the series of bonds. The purchaser might even know, indeed it may be admitted that he would be required to know, the assessed valuation of the taxable property of the county, and yet he could not ascertain by reference to one of the bonds and the assessment roll whether the county had exceeded its power, under the constitution, in the premises. True, if a purchaser had seen the whole issue of each series of bonds and then compared it with the assessment roll, he might have been able to discover whether the issue exceeded the amount of indebtedness limited by the constitution. But that is not the test to apply to a transaction of this nature. It is not supposed that any one person would purchase all of the bonds at one time, as that is not the usual course of business of this kind. The test is — What does each individual bond disclose? If the face of one of the bonds had disclosed that, as a matter of fact, the recital in it, with respect to the constitutional limitation, was false, of course the county would not be bound by that recital, and would not be estopped from pleading the invalidity of the bonds in this particular. Such was the case in *Lake County* v. *Graham* and *Dixon County* v. *Field*. But that is not this case. Here, by virtue of the statute under which the bonds were issued, *the county commissioners were to determine the amount to be issued*, which was not to exceed the total amount of the indebtedness at the date of the first publication of the notice requesting the holders of county warrants to exchange their warrants for bonds, at par. The statute, in terms, gave to the commissioners the determination of a fact, that is, whether the issue of bonds was in accordance with the constitution of the State and the statute under which they

were issued, and required them to spread a certificate of that determination upon the records of the county. The recital in the bond to the effect that such determination has been made, and *that the constitutional limitation had not been exceeded in the issue of the bonds, taken in connection with the fact that the bonds themselves did not show such recital to be untrue,* under the law, *estops the county from saying that it is untrue.* *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Town of Venice* v. *Murdock*, 92 U. S. 494; *Marcy* v. *Township of Oswego*, 92 U. S. 637; *Wilson* v. *Salamanca*, 99 U. S. 499; *Buchanan* v. *Litchfield*, 102 U. S. 278; *Northern Bank* v. *Porter Township*, 110 U. S. 608." After referring to what was said in *Town of Coloma* v. *Eaves* and *Buchanan* v. *Litchfield*, the court thus concludes its opinion: "We think this case comes fairly within the principles of those just cited; and that it is not governed by *Dixon County* v. *Field* and *Lake County* v. *Graham*, but is distinguishable from them in the essential particulars above noted."

It is contended that the present case is controlled by *Sutliff* v. *Lake County Commissioners*, 147 U. S. 230, 235, 237–8, rather than by *Chaffee County* v. *Potter*. The action in the *Sutliff* case was upon coupons of bonds issued by a county of Colorado, each bond reciting that it was issued under and by virtue of and in compliance with the act of assembly entitled "An act concerning counties, county officers and county government, and repealing laws on these subjects," approved March 24, 1877, and it was certified in each bond that "all the provisions of said act have been fully complied with by the proper officers in the issuing of this bond." It was a vital fact in that case that there was no recital in the bonds that the indebtedness thus created was not in excess of the constitutional limit. Still the defence was that the bonds in fact increased the indebtedness of the county to an amount in excess of the limit prescribed by the state constitution and therefore were illegal and void. The court, upon the facts certified and in the light of previous decisions, held it to be clear that "the plaintiff, although a purchaser for value and before maturity of the bonds, was charged with the duty

of examining the records of indebtedness provided for in the statute of Colorado, in order to ascertain whether the bonds increased the indebtedness of the county beyond the constitutional limit; and that the recitals in the bonds did not estop the county to prove by the records of the assessment and the indebtedness that the bonds were issued in violation of the constitution. In those cases," it continued, "in which this court has held a municipal corporation to be estopped by recitals in its bonds to assert that they were issued in excess of the limit imposed by the constitution or statutes of the State, the statutes, as construed by the court, left it to the officers issuing the bonds to determine whether the facts existed which constituted the statutory or constitutional condition precedent, and did not require those facts to be made a matter of public record. *Marcy* v. *Oswego*, 92 U. S. 637; *Humboldt* v. *Long*, 92 U. S. 642; *Dixon County* v. *Field*, 111 U. S. 83; *Lake County* v. *Graham*, 130 U. S. 674, 682; *Chaffee County* v. *Potter*, 142 U. S. 355, 363. But if the statute expressly requires those facts to be made a matter of public record, open to the inspection of every one, there can be no implication that it was intended to leave that matter to be determined and concluded, contrary to the facts so recorded, by the officers charged with the duty of issuing the bonds." After referring to *Dixon County* v. *Field*, above cited, the court proceeded to show the precise grounds upon which the decisions in *Lake County* v. *Graham* and *Chaffee County* v. *Potter* were rested: " That decision [*Dixon County* v. *Field*] and the ground upon which it rests were approved and affirmed in *Lake County* v. *Graham* and *Chaffee County* v. *Potter*, above cited, each of which arose under the article of the constitution of Colorado now in question, but under a different statute, which did not require the amount of indebtedness of the county to be stated on its records. In *Lake County* v. *Graham*, each bond showed on its face the whole amount of bonds issued, and the recorded valuation of property showed that amount to be in excess of the constitutional limit; and for this reason, as well as because the bonds contained no recital upon that point, the county was held not to

be estopped to plead that limit. 130 U. S. 682, 683. In *Chaffee County* v. *Potter*, on the other hand, the bonds contained an express recital *that the total amount of the issue did not exceed the constitutional limit*, and did not show on their face the amount of the issue, and the county records showed only the valuation of property, so that, as observed by Mr. Justice Lamar in delivering judgment : ' The purchaser might even know, indeed it may be admitted that he would be required to know, the assessed valuation of the taxable property of the county, and yet he could not ascertain by reference to one of the bonds and the assessment roll whether the county had exceeded its power, under the constitution, in the premises.' 142 U. S. 363. The case at bar does not fall within *Chaffee County* v. *Potter*, and cannot be distinguished in principle from *Dixon County* v. *Field* or from *Lake County* v. *Graham*. The only difference worthy of notice is that in each of these cases the single fact required to be shown by the public record was the valuation of the property of the county, whereas here two facts are to be so shown, the valuation of the property, and the amount of the county debt. But, as both these facts are equally required by the statute to be entered on the public records of the county, they are both facts of which all the world is bound to take notice, and as to which, therefore, the county cannot be concluded by any recitals in the bonds."

It thus appears that in the *Sutliff* case the court neither modified, nor intended to modify, but distinctly recognized, the principle announced in *Chaffee County* v. *Potter*, namely, that the recital in the bonds that the debt thereby created did not exceed the limit prescribed by the constitution estopped the county from asserting, as against a *bona fide* holder for value, that the contrary was the fact.

We have made this extended reference to adjudged cases because of the wide difference among learned counsel as to the effect of our former decisions. This course has also been pursued in order to bring out clearly the fact that the present case is controlled by the judgment in *Chaffee County* v. *Potter*. The views of the Circuit Court, as expressed in its charge in

this case and as enforced by its peremptory instruction to find for the defendant, cannot be approved without overruling that case. It was expressly decided in the *Chaffee County case* that the statute under which the bonds there in suit (the bonds here in suit being of the same class) authorized the County Commissioners to determine whether the proposed issue of bonds would in fact exceed the limit prescribed by the constitution and the statute; and that the recital in the bond to the effect that such determination had been made and that the constitutional limitation had not been exceeded, taken in connection with the fact that the bonds themselves did not show such recital to be untrue, estopped the county, under the law, from saying that the recital was not true. We decline to overrule *Chaffee County* v. *Potter*, and upon the authority of that case, and without reëxamining or enlarging upon the grounds upon which the decision therein proceeded, we adjudge that as against the plaintiff the county of Gunnison is estopped to question the recital in the bonds in question to the effect that they did not create a debt in excess of the constitutional limit and were issued by virtue of and in conformity with the statute of 1881 and in full compliance with the requirements of law.

We have assumed thus far that the plaintiff corporation was a *bona fide* purchaser or holder of the bonds to which the coupons in suit were attached. Upon this question we concur in the views expressed by the Circuit Court of Appeals. Speaking by Judge Thayer, that court said: "The testimony contained in the present record shows, we think, without contradiction that the plaintiff was a *bona fide* holder when the suit was brought of at least five of the bonds which are involved in the present controversy, because it holds the title of Joseph Stanley, who was himself an innocent purchaser of said bonds before maturity, for the price of ninety-eight cents on the dollar. The rights which Stanley acquired by virtue of such purchase inure to the plaintiff, by virtue of its purchase of the bonds from Stanley in June, 1892, and this without reference to any knowledge which the plaintiff may have had at the latter date affecting the validity of the secu-

rities. A *bona fide* holder of commercial paper is entitled to transfer to a third party all the rights with which he is vested, and the title so acquired by his indorsee cannot be affected by proof that the indorsee was acquainted with the defences existing against the paper. *Commissioners of Marion County* v. *Clark*, 94 U. S. 278, 286; *Hill* v. *Scotland County*, 34 Fed. Rep. 208; Daniel on Negotiable Instruments, (4th ed.,) § 803, and cases there cited." 49 U. S. App. 399, 413.

The remaining five bonds owned by the plaintiff corporation were also purchased from Stanley, who received them directly from the county in exchange for warrants that he owned and held. There is no reason why upon the surrender of county warrants for county bonds he was not entitled to the benefit of the rule above declared as to the conclusiveness of the recital in the bonds, or why he may not be regarded as much an innocent holder of the bonds exchanged for county warrants as of the other bonds purchased by him in open market. There is no proof that at the time of such exchange he had or was chargeable with knowledge or notice that the debt created by the bonds exceeded the constitutional limit; consequently, in taking the bonds in exchange he was entitled, for the reasons heretofore given, to rely upon the truth of the recitals contained in them. When the Board of County Commissioners, proceeding under the act of 1881, offered to exchange county bonds for the warrants held by him, he was entitled under the circumstances disclosed to assume it to be true as recited in the bonds that the constitutional limit was not being exceeded.

It is insisted with much earnestness that the principles we have announced render it impossible for a State by a constitutional provision to guard against excessive municipal indebtedness. By no means. If a state constitution, in fixing a limit for indebtedness of that character, should prescribe a definite rule or test for determining whether that limit has already been exceeded or is being exceeded by any particular issue of bonds, all who purchase such bonds would do so subject to that rule or test, whatever might be the hardship in the case of those who purchased them in the open market

in good faith. Indeed, it is entirely competent for a State to provide by statute that all obligations, in whatever form executed by a municipality existing under its laws, shall be subject to any defence that would be allowed in cases of non-negotiable instruments. But for reasons that every one understands no such statutes have been passed. Municipal obligations executed under such a statute could not be readily disposed of to those who invest in such securities.

It follows that the Circuit Court erred in directing the jury to return a verdict for the defendant.

What has been said renders it unnecessary to consider various questions arising upon exceptions to specific rulings in the Circuit Court as to the admission and exclusion of evidence, and as to those parts of the charge to which objections were made. Those rulings were inconsistent with the principles herein announced.

As neither the Circuit Court nor the Circuit Court of Appeals proceeded in accordance with the principles herein announced, the judgment of each court is

*Reversed, and the cause is remanded for further proceedings consistent with this opinion.*