## UNITED STATES v. DENSMORE. *
### No. 6646.

Circuit Court of Appeals, Ninth Circuit.
May 16, 1932.

Samuel W. McNabb, U. S. Atty., and Dorothy Lenroot Bromberg, Asst. U. S. Atty., both of Los Angeles, Cal. (H. C. Veit, U. S. Veterans' Administration, of Los Angeles, Cal., of counsel), for the United States.

Ira A. Gwin, of Los Angeles, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

*Rehearing denied June 24, 1932.

WILBUR, Circuit Judge.

Appellee recovered judgment against the United States upon a war risk insurance policy which had lapsed on May 2, 1918. His claim was predicated upon the contention, which the jury sustained, that he had been permanently and totally disabled during the life of the policy. The suit was brought on July 9, 1930, some twelve years after it was alleged that the appellee's rights upon the policy had matured. The sole question raised by the appeal is whether or not the veteran made a claim upon his war risk insurance based upon his alleged permanent and total disability at a time when the contract of insurance was in force. Section 445, 38 USCA, World War Veterans' Act 1924, § 19, as amended July 3, 1930, 46 Stat. 992, provides:

"In the event of disagreement as to claim, including claim for refund of premiums, under a contract of insurance between the bureau and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the Supreme Court of the District of Columbia or in the district court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is hereby conferred upon such courts to hear and determine all such controversies. * * *

"The term 'claim' as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits and the term 'disagreement' means a denial of the claim by the director or some one acting in his name on an appeal to the director. This section, as amended, with the exception of this paragraph, shall apply to all suits now pending against the United States under the provisions of the War Risk Insurance Act, as amended, or this chapter."

The appellee alleged in his complaint and the government denied the making of such claim and the disagreement thereon. Appellee testified in part as follows:

"Q. Mr. Densmore, did you ever make a claim to the government for insurance? A. Yes, sir.

"Q. Do you remember about when that was? A. It was in '21, I think it was; I wouldn't be positive.

"Q. Did they act upon that claim? A. Well, I got a card from them, a statement that they didn't think I was entitled to it, that they could not find that I would be entitled to it, so that was all there was to it.

"On cross-examination by counsel for the defendant, the plaintiff testified as follows:

"Q. Did you state, Mr. Densmore, that you applied for insurance benefits in 1920 or 1921? Isn't it a fact that these documents that have just been read into evidence each have to do with compensation, and that what you have applied for is other than for insurance benefits? A. Well, I had Mr. Doomer, I believe it was, at Eric, Oklahoma, write to see about my insurance for me; he was the American Legion man there.

"Q. Did you ever put in anything yourself for insurance as distinguished from compensation, Mr. Densmore? A. Well, I didn't do it, I got him to do it because I can't write.

"Q. Did you write your signature? A. Yes, ma'am.

"Q. It was for insurance and not for compensation? A. Yes, that is what I put on.

"Q. You say you can't write. Is this your handwriting, Mr. Densmore? A. I could write my name.

"Q. What date was that that you made that claim? A. I don't know, I couldn't say. * * *

"Q. You signed something that you thought was an insurance claim, did you? A. Well, I paid my money for the insurance when I was in the army, when I was discharged I was totally disabled, and I felt I was entitled to my insurance.

"Q. You felt all the time after that that you were entitled to the insurance? A. Yes, ma'am, I did.

"Q. About when was this, do you remember at all, when you applied for insurance? A. I couldn't be positive what time it was, but I think it was in '21 or '22, somewhere along there.

"Q. Is this your signature? A. Or maybe, '20, I wouldn't be positive. * * *

"Q. Now, at that time you stated that you were not carrying government insurance, Mr. Densmore. How about that? A. Well, I wasn't carrying it, because I had not carried it since I came out of the army. How could I carry it when I wasn't able to do anything myself.

"Q. You felt that the insurance was not in force at that time? A. Well, according to what they wrote me that is all I had to go by.

"Q. You didn't put in any further claim? A. No, ma'am.

"Q. You didn't send any further document to the Veterans' Bureau? A. No, I didn't send anything. I had no money to do it.

"Q. You knew that you could submit a claim through the Veterans' Bureau? A. No, I didn't know nothing about it.

"Q. So there was no disagreement between you and the Veterans' Bureau because you accepted what the Veterans' Bureau stated? A. They wrote me a card stating that they could not find where I was eligible to this insurance, and that is all there was said. And I kept the card, but it were burned with my other papers."

The burden was upon the appellee to establish that he had made a claim to the Veterans' Bureau that he had become totally and permanently disabled while his policy of insurance was still in force or which used words showing an intention to claim insurance benefits. There is no evidence that the appellee did this. The statement that he had made a claim to the government for insurance, and that in reply thereto he received a card "from them" stating that "they did not think I was entitled to it" and, "that they could not find that I would be entitled to it," is very far from stating that a definite claim was made of a right under a policy of insurance for the benefits thereof upon the theory that the applicant had suffered an injury during the life of the policy for which the government had agreed to compensate the insured. Upon the cross-examination of the appellee the matter was left in an even greater state of uncertainty. The evidence is not only insufficient to establish the fact that a claim was made upon the insurance policy in question by reason of disability suffered during the life of the policy, but there is no evidence whatever of a disagreement between the appellee and the director of the Bureau of War Risk Insurance or some one acting in his name on the appeal to the director. The most that can be inferred from the appellee's testimony is that somebody connected with the government had written a statement to the effect that they did not think he was entitled to it; that they could not find that he was entitled to it.

One of the obvious purposes of the legislation with regard to disagreement upon a claim by a veteran is to require the veteran to exhaust his remedies in the department before bringing suit. His right to bring suit is conditioned upon his having done so. The statute provides that the final decision of any division, bureau, or board in the veterans' administration shall be subject to review on appeal by such administrator. 46 Stat. 1016, ch. 863, section 2 (38 USCA § 11a).

The language of the statute seems perfectly clear and is in accord with the statement with reference thereto contained in the report of the Senate Finance Committee to the Senate with reference to the proposed amendments to section 19 of the World War Veterans' Act. This report is in part as follows: "A paragraph is added to define the meaning of the term 'claim' and the term 'disagreement' as used therein. It has for its purpose the establishment of a definite rule that before suit is brought a claimant must make a claim for insurance and prosecute his case on appeal through the appellate agencies of the bureau before he shall have the right to enter suit. Your committee felt that in view of the fact that the Government has set up in the bureau expensive machinery for hearing claims it was unfair for a veteran to disregard this machinery on the basis of the disallowance of his claim by some subordinate board and enter suit."

The question involved on this appeal is whether or not there was sufficient substantial evidence of the claim and disagreement to be submitted to the jury as was done. It is, notwithstanding, proper to call attention to the fact that the evidence of the government showed that there was no such claim on file, no record of the same having been made or denied although the files showed that the veteran in 1920 made a claim for compensation and that he next made a claim in July, 1930, when he made an application for a disability allowance under the new law amending the original law. Under these circumstances, there can be little doubt that the testimony of the appellee refers to his application for compensation made in 1920, but whether or not this is true it is sufficient for the purposes of the appeal to say that there is no substantial evidence to support the allegation that the plaintiff made a claim within the meaning of 38 USCA § 445 and no evidence whatever of a disagreement between the appellee and the director of the Veterans' Bureau. A similar question has been before the courts a number of times, and in view of the clarity of the statute it is unnecessary to do more than cite some of these cases. U. S. v. Jackson (C. C. A.) 34 F.(2d) 241, 73 A. L. R. 316; Manke v. U. S. (C. C. A.) 38 F.(2d) 624; Berntsen v. U. S. (C. C. A.) 41 F.(2d) 663; U. S. v. Burleyson (C. C. A.) 44 F.(2d) 502.

Appellee makes the point that the certificate to the bill of exceptions is not suffi-

cient under the rule which requires that where the verdict is attacked on the ground that the evidence is insufficient to sustain the same the bill of exceptions should show that all of the evidence presented to the jury is incorporated in the bill of exceptions. This of course means all of the evidence bearing upon the question involved in the motion for directed verdict. The bill of exceptions in this case does not contain the evidence adduced by the parties with relation to the nature and character of appellee's injuries. The bill of exceptions recites that the appellee offered evidence in support of the allegations of paragraph V of his complaint, namely, "that the plaintiff had made due proof of total and permanent disability to the defendant and had demanded payment of insurance benefits, and that the defendant had disagreed with the plaintiff as to his claim of disability, the plaintiff testified in his own behalf as follows:" Then follows a statement of his evidence. At the conclusion of the testimony which is quoted at length it is stated: "No further testimony was introduced in behalf of plaintiff relative to the aforesaid allegations of the complaint herein." The government then introduced evidence tending to show that no claim was made or disagreement existed. The bill states: "Upon the conclusion of all of the evidence, counsel for the defendant renewed the motion for a directed verdict on the ground that there was entire failure to prove that a disagreement existed between the plaintiff and the Veterans' Bureau such as is contemplated by Section 19 of the World War Veterans' Act, as amended July 3, 1930 (38 USCA § 445), which motion was denied, and an exception noted." The certificate to the bill of exceptions, after stating the steps taken for the settlement of the bill, certifies that: "The bill was settled by the court on the 12th day of September, 1931, and the amendments allowed by the court have been inserted in the foregoing bill of exceptions, which bill is in all respects correct, and hereby approved, allowed, and settled and made a part of the record herein."

It is clear, we think, from the bill and certificate thereto that the bill purports to contain all the evidence presented to the court and jury upon the subject of the making of a claim and a disagreement thereon. See Gunnison County Commissioners v. Rollins, 173 U. S. 255, 261, 19 S. Ct. 390, 43 L. Ed. 689. Rule 10 of this court provides: "Only so much of the evidence shall be embraced in a bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved."

Judgment reversed.