## E. K. WOOD LUMBER CO. v. ANDERSEN.*
### No. 7791.

Circuit Court of Appeals, Ninth Circuit.

Jan. 6, 1936.

Claude E. Wakefield, and Bogle, Bogle & Gates, all of Seattle, Wash., for appellant.

W. F. Magill and M. B. Meacham, both of Portland, Or., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

* Writ of certiorari denied 56 S. Ct. 669, 80 L. Ed. ——.

GARRECHT, Circuit Judge.

The appellee has moved that the bill of exceptions be stricken, for the reason that it was not authenticated within the time provided by law or by the rules of the court below or within the term of court at which the trial was had. The bill of exceptions is also attacked as not showing that it contains all the evidence.

For a proper discussion of these preliminary questions, a chronological statement of some of the proceedings below is necessary.

The judgment was entered on December 5, 1934. In the absence of valid extensions, it is conceded that the term of court ended on February 5, 1935. 28 U.S. C.A. § 193.

The appellant, however, in its reply brief states that rule 108 of the court below provides as follows: "In all cases in which within thirty days prior to the expiration of a term of court an order, judgment or decree has been made or entered, the term shall be extended for thirty days beyond its statutory period for further action and for pleading therein."

We therefore look to the record to ascertain if any such order was entered prior to the expiration of the regular term; that is to say, prior to February 5, 1935.

Three such orders were filed on January 31, 1935. One was an order directing the forwarding of original exhibits to this court, another was an order extending the time and term for filing the bill of exceptions to March 4, 1935, and the third was an order extending the time for filing the transcript on appeal.

On March 2, 1935, or two days before the expiration of the term as extended by the second order above referred to, the District Judge entered an order and certificate reading in part as follows:

"This matter having, on the 18th day of February, 1935, come regularly on for hearing and settlement of a Bill of exceptions herein, * * * and the parties having been heard upon the proposed Bill, amendments and objection, and the Court being advised

"It is ordered That the foregoing Bill of Exceptions, consisting of pages 1 to 70 inclusive, be and the same hereby is settled, signed and certified. * * *

"It is further ordered, That said Bill of Exceptions so settled be, and the same hereby is, made a part of the record in the above entitled cause."

The appellee contends that it does not "appear from the Bill or the Certificate that it was settled within the term of court at which the trial was had nor within any valid extension thereof," and relies upon the cases of United States v. Payne (C.C. A.9) 72 F.(2d) 593, 594, and Tramel v. United States (C.C.A.10) 56 F.(2d) 142, 143.

It is to be observed, however, that the order and certificate signed by the District Judge in the instant case recites that the matter has "on the 18th day of February, 1935, come regularly on for hearing and settlement of a Bill of Exceptions," etc., and that "the foregoing Bill of Exceptions, consisting of pages 1 to 70 inclusive, be and the same hereby is settled, signed and certified." Such recitals make it affirmatively appear that the bill of exceptions was submitted for settlement within the time allowed by law. It is, of course, well settled that, "when a bill is submitted to the trial judge personally for his action, and his action is invoked, within the term, as stated, or 'as properly extended, no further extension of time is necessary." O'Brien's Manual of Federal Appellate Procedure (2d Ed.), 1935, Cum.Supp., p. 47.

In Welch v. St. Helens Petroleum Company, 78 F.(2d) 631, 632, decided on July 9, 1935, this court said:

"After the argument the appellees moved to strike out the bill of exceptions in each of these cases 'upon the ground that none of said bills affirmatively shows that it was settled or signed or authenticated within either the term of court in which the trial occurred or the term of court in which judgment was entered, nor within any valid extension of either of said terms.' Appellees cite in support of their motion our decision in U. S. v. Payne (C.C.A.) 72 F.(2d) 593. That decision, however, is not controlling here. The certificate to the bill of exceptions in each of these cases is in the following language: 'The following Bill of Exceptions duly proposed and agreed upon by counsel for the respective parties, is correct in all respects and is hereby approved, allowed and settled and made a part of the record herein and said Bill of Exceptions may be used by the parties plaintiff or defendant upon any appeal taken by either party plaintiff or defendant.'

"The trial judge having certified to the fact that each of the bills of exceptions had been 'duly proposed,' it thus affirmatively appears that each of the bills of exceptions was submitted to the court for settlement within the time allowed by law. The motion to strike the bills of exceptions is denied."

In United States v. Paul (C.C.A.9) 76 F.(2d) 132, the certificate to the bill of exceptions contained the following recital: "That the above and foregoing bill of exceptions was duly and regularly filed with the clerk of the said court and thereafter duly and regularly served within the time authorized by law; and that no amendments were proposed to said bill of exceptions excepting such as are embodied therein; that due and regular notice of time for settlement and certifying said bill of exceptions was given."

Of such certification we said: "This recital is sufficient in the absence of anything to the contrary in the bill to show that it was settled in due time. [Case cited.]" See, also, U. S. v. Alcorn et al., 80 F.(2d) 487, decided by this court December 6, 1935; La Grotta v. U. S. (C.C.A.8) 77 F.(2d) 673, 675.

█ Accordingly, we hold that the bill of exceptions in the instant case was presented, settled, and signed within the time provided by law and the rules of the court below.

We advert next to the objection that it does not appear from the bill of exceptions or from the certificate of the District Judge that the bill contains all the evidence introduced at the trial. The appellee raises this point in connection with the appellant's contention that the court erred in denying the appellant's motion for a directed verdict, made at the close of the plaintiff-appellee's case and renewed after both sides had rested.

██ It is well settled, of course, that, "if a motion is made in the trial court to take the case from a jury, or other fact-finding tribunal, and direct a verdict or give judgment on the ground that, as a matter of law, only one verdict or judgment can be reached, it must appear that in the bill of exceptions is contained all the evidence actually adduced before the trial court." It is equally well settled that "by this it is not meant that the evidence shall be set forth at length in the words of the witnesses, and of the writings and documents admitted, but only that the purport and substance of all of it be included." Krauss Bros. Lumber Co. v. Mellon, 276 U.S. 386, 390, 391, 48 S.Ct. 358, 360, 72 L.Ed. 620, and the many cases there cited. See, also, Coberth v. Wilson (C.C.A.9) 63 F.(2d) 156 157.

The bill of exceptions herein contains the following recitals:
"* * * A jury was duly empaneled and sworn and the following proceedings were had: * * *

"The plaintiff then called the following witnesses and presented the following proof in support of the plaintiff's case: * * *

"Plaintiff then rested. * * *

"Defendant's case * * *

"Whereupon the defendant rested.

"The plaintiff then called the following witnesses in rebuttal: * * *

"Mr. Magill. The plaintiff rests.

"Mr. Wakefield: The defendant has no further testimony, Your Honor."

█ We believe that the foregoing averments in the bill of exceptions sufficiently show that it contains all the evidence. It is not necessary that it so state in express terms.

In the leading case of Board of Com'rs of Gunnison County v. E. H. Rollins & Sons, 173 U.S. 255, 261, 262, 19 S.Ct. 390, 392, 43 L.Ed. 689, the bill of exceptions contained recitals very similar to those found in the bill in the instant case. The parallelism is evident from the following language of Mr. Justice Harlan: "We are of opinion that the bill of exceptions should be taken as containing all the evidence. It appears that, as soon as the jury was sworn to try the issues in the cause, 'the complainants to sustain the issues on their part offered the following oral and documentary evidence.' Then follow many pages of testimony on the part of the plaintiffs, when this entry appears: 'Whereupon complainants rested.' Immediately after comes this entry: 'Thereupon the defendants, to sustain the issues herein joined on their part, produced the following evidence.' Then follow many pages of evidence given on behalf of the defendant, and the evidence of a witness recalled by the defendant, concluding with this entry: 'Whereupon the further proceedings herein were continued until the 20th day of May, 1896, at 10 o'clock A. M.' Immediately following is this entry: 'Wednesday, May 20th, at 10 o'clock, the

further trial of this cause was continued as follows.' The transcript next shows some discussion by counsel as to the exclusion of particular evidence, after which is this entry: 'Thereupon counsel for defendant made a formal motion under the evidence on both sides that the court instruct the jury to return a verdict for the defendant.' Although the bill of exceptions does not state, in words, that it contains all the evidence, the above entries sufficiently show that it does contain all the evidence. It is therefore proper to inquire on this record whether the circuit court erred in giving a peremptory instruction for the defendant." See, also, Clyatt v. United States, 197 U.S. 207, 220, 221, 25 S.Ct. 429, 49 L.Ed. 726; Crowe v. Trickey, 204 U.S. 228, 235, 27 S.Ct. 275, 51 L.Ed. 454; Rasmussen v. United States (C.C.A.9) 8 F.(2d) 948, 949, certiorari denied 270 U.S. 653, 46 S.Ct. 352, 70 L.Ed. 782; United States v. Densmore (C.C.A.9) 58 F.(2d) 748, 751, certiorari denied 287 U.S. 598, 53 S.Ct. 24, 77 L.Ed. 521; Shreve v. United States (C.C.A.9) 77 F.(2d) 2, 8; Stinson v. Business Men's Accident Ass'n (C.C.A.10) 43 F.(2d) 312, 314; Page v. Lafayette Worsted Co. (C.C.A.1) 66 F.(2d) 339, 341, certiorari denied 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596; United States v. Alvord (C.C.A.1) 66 F.(2d) 455, 456, certiorari denied 291 U.S. 661, 54 S.Ct. 376, 78 L.Ed. 1053; Equitable Life Assur. Soc. v. Halliburton (C.C.A.10) 67 F.(2d) 854.

The motion to strike the bill of exceptions is denied.

We next turn to a consideration of the appeal on the merits.

This is an action at law brought to recover damages for the death of Andrew Andersen, which is alleged by the appellee to have been caused by the appellant's negligence when the appellant's vessel collided with Andersen's fishing boat. The appellant filed an answer containing a general denial, together with the affirmative defense that the decedent was guilty of contributory negligence. The jury returned a verdict in the appellee's favor, and a judgment was rendered thereon. From such judgment, the present appeal is being prosecuted; the assignments of error being directed against the lower court's denial of the appellant's motions for a directed verdict.

Viewed in a light most favorable to the appellee—as must be done when a motion for a directed verdict is being considered—the evidence in this case establishes the following state of facts:

On the night of September 11, 1933, many fishermen were engaged at their tasks on the Columbia river from Puget Island to Skamokawa. That evening Andrew Andersen and four other men, all gill net fishermen who shared the Gold Mine Drift, were at their tow head for the purpose of laying out their nets. The order of embarking was determined by lot. Andersen was No. 4; Alex Peterson, who was No. 3, and A. B. Olson, who was No. 5, both testified.

About the hour of 11 o'clock appellant's steam schooner Cascade, 260 feet long, with a heavy load of lumber on her deck forward and aft, going at a speed of about ten knots an hour and outward bound, was on the Hunting Island ranges, well down to the northwest end of Puget Island. The weather was variously described as "nice," "clear," and "calm."

Peter Mallkoff, called as a witness for the appellee, testified that he was at the steering wheel from 10 o'clock to midnight on the night in question; that he saw "off and on lights of craft in the river in the vicinity of Puget Island"; that the schooner followed the usual course of vessels coming down the river; that, so far as he knew, the Cascade was "steering a straight course"; that the vessel did not steer very well, and he "had an awful time to keep her straight"; that about an hour after he took the wheel the steering gear jammed; that, just before the steering gear jammed, the pilot gave him orders "to put her hard astarboard."

Mallkoff's testimony then continued as follows: "When I swung the wheel hard astarboard the bow of the vessel moved left to port. I do not know how long the boat ran after the steering gear jammed. The pilot rang her up and she started to shake. He must have rang her up to full speed astern. I called out 'steering gear jammed', and the third mate jumped and was going to give me a hand to move it, but we couldn't do anything and the pilot got hold of the telegraph. The engines were reversed and we went full speed astern. The boat started to shake—full speed astern, I guess—she started to shake the same as hitting logs or something. After she ran astern for a minute and a half or so, the gear loosened up again. No whistles were blown when the engines were put astern. There were no big vessels

ahead as far as I know. There were some small craft ahead. The steering wheel cleared and I got orders to get back on the course again, and the pilot was standing on one side of the bridge and the mate on the other and they were looking—the pilot passed the remark there was nobody hollering. They had some talk but I didn't pay much attention to it, and kept on going. The mate said he didn't see anything astern; that he didn't see any lights or anything else. We didn't have any trouble with the steering gear that night except this once when it jammed. During the time I was at the wheel I didn't see any lookout on duty, nor did I see anyone go forward. I didn't hear any calls from the lookout to the pilot or hear the pilot return any calls to the lookout while I was at the wheel. The doors of the pilot house were open."

This witness also testified that "just before the steering gear jammed the pilot gave me orders to put her hard astarboard"; that he swung the wheel hard astarboard, which caused the bow of the vessel to move left to port. The steering gear jammed in this position, with the result, as some of the witnesses stated, that the vessel went far to the left as if she were going to cross to the Oregon side. Thomas A. Lowery, the pilot, testified: "When the steering gear jammed I put the vessel full astern. We stayed that way for about two minutes and then I put her full ahead. The steering engine was free before I put her full ahead. When you put the engines full astern on a ship, the minute the ship loses her steeringway the stern of the vessel goes to port."

The Cascade's logbooks show that the steering gear jammed at 11:10 p. m., and the order full astern was then given, and at 11:12 p. m. the steering gear was reported "O. K.," followed by the order "full ahead."

On cross-examination, Mallkoff said that before the steering wheel jammed the Cascade passed "quite a number of fishing boats and other boats." He added: "Just before the steering gear jammed I saw a light ahead of us on the starboard bow. I saw it a couple of times, sometimes ahead, and it disappeared again."

The testimony of one of the fishermen, who was next in position to decedent, was to the effect that just before the Cascade made this turn to port Andersen's boat, with its drift lights on, was seen near the place where the turn was made.

Other of the appellee's witnesses testified that they did not see a lookout on the Cascade; one of them declaring "I paid particular attention to whether there was a lookout on that ship because I had something to say to him. I was going to ask him to kindly get the hell over in the channel." Still another witness testified positively, "There was no lookout."

About 12:30 a. m., of September 12, 1933, a fisherman who had been fishing on the drift further down the river and adjoining the one where Andersen fished, in picking up his net found that another net (afterwards identified as Andersen's) had drifted into his from above. There was a lighted buoy on the outer end. Entangled in the net was found a piece of a boat, about four and one-half or five feet long and about three feet deep. It was part of the hull of Andersen's boat. The piece was introduced as an exhibit in the court below, and has been sent up to this court. On the portion of this fragment, which is painted white above the water line of the hull, is a smear of red paint. The bow of the Cascade was painted red. Later, on the morning of September 12, 1933, at about 5 o'clock another fisherman found the bow of Andersen's boat, with some furniture inside. There was considerable wreckage around the boat.

The body of Andersen was taken from the river on the morning of September 21, 1933. Upon it was found his gold watch, the hands of which stood at 11:15.

A section of the cabin of Andersen's boat, washed ashore, was found in the vicinity of the decedent's drift in November, 1933. In April of the year following, the stern of Andersen's boat, with the engine in it, was found in the bottom of the river on the Gold Mine drift, near the place where the Cascade had made the turn to port on the night Andersen's boat was crushed.

No large boat other than the Cascade was on the river between the time Andersen's drift lights were last seen and the finding of his net with portions of his broken boat in it.

It is a common practice for vessels navigating the Columbia river to turn out to avoid fishing boats as they fish in the channel.

Andrew Andersen was a strong, healthy man, 43 years of age, and one of the best fishermen on the river. His boat was 26 feet long, made of sound inch planking, and, at the time, was in the very best condition. The broken boat was in evidence before the jury.

Defendant moved the court to direct a verdict in its favor.

Appellant cites numerous cases from which it is argued that the instant cause should not have been submitted to the jury; the contention being that any verdict would rest merely on inferences. It would be an endless task to no good purpose to attempt to review all the authorities on this question. It is sufficient to say that the cases reveal no fixed and inflexible rule. The favorite formula that a presumption may not be based on another presumption, or an inference on another inference, has often been used carelessly and inaccurately with resultant confusion.

This rule has been discussed at length in Jones on Evidence (2d Ed.) § 364. There the author refers to the conflicting authorities and offers what he terms the "true rule." He maintains that it is consonant with enlightened common sense and that the better reasoned cases sustain the holding that a "fact," although arrived at by indirect or circumstantial evidence, may serve as a basis for an inference; where the evidence sustaining the first inference is of such a character and so strong that it justifies a conclusion, that is to say, that "once the facts are established from which a presumption or inference logically flows or legally arises, whether such basic facts are established by circumstantial evidence or by direct testimony, it is the province of the jury to deduce the presumption or inference." See Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn.App. 170; Sommer v. Yakima Motor Coach Co., 174 Wash. 638, 26 P.(2d) 92; Chesapeake & O. R. Co. v. Ware, 122 Va. 246, 95 S.E. 183; Wigmore on Evidence, § 41.

It is well established that, if there is any evidence upon which a jury could properly find a verdict for the party producing it, a motion for a directed verdict by the opposing party should be denied. In the leading case of Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L. Ed. 720, the court said: "Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them. [Cases cited.] Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fairminded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. [Case cited.]"

In Brownlee v. Mutual Ben. Health & Accident Ass'n, 29 F.(2d) 71, 76, this court said:

"A motion for a directed verdict, like a motion for a nonsuit, is in the nature of a demurrer to the evidence. In its determination the evidence upon the part of plaintiff must be accepted as true, and every proper inference or deduction therefrom taken most strongly in favor of the plaintiff.

"As said by Mr. Justice Harlan in Travelers' Ins. Co. v. Randolph (C.C.A.) 78 F. 754, 759:

"'The jury should be permitted to return a verdict according to its own view of the facts, unless upon a survey of the whole evidence, and giving effect to every inference to be fairly or reasonably drawn from it, the case is palpably for the party asking a peremptory instruction.'"

The rule as to direction of verdicts was thus stated in the case of Mutual Life Ins. Co. v. Hatten (C.C.A.8) 17 F.(2d) 889, 893, 894: "Where the evidence on a fact matter is of such character that reasonable men, in an impartial and fair exercise of their judgment, may honestly reach different conclusions, the question is for the jury. [Many cases cited.]" See, also, Garrett Const. Co. v. Aldridge (C.C.A.8) 73 F.(2d) 814, 816.

Not only should we construe "all the evidence in a way most favorable to the appellee," but "all countervailing evidence" should be disregarded. Chesapeake & O. Ry. Co. v. Ringstaff (C.C.A.6) 67 F.(2d) 482, 484.

In the instant case, "upon a survey of the whole evidence," we cannot say that "the case is palpably for the party asking a peremptory instruction." On the contrary, "the evidence on a fact matter is of

such character that reasonable men, in an impartial and fair exercise of their judgment, may honestly reach different conclusions."

Accordingly, we hold that the court below was correct in denying the appellant's motions for a directed verdict, and the judgment is affirmed.

Affirmed.