ELLIOTT v. CANADIAN PACIFIC RY. CO.

(Circuit Court of Appeals, Second Circuit. April 14, 1908.)

No. 197.

1. MASTER AND SERVANT—RAILROADS—DEATH OF CAR REPAIRER—CONTRIBU-
TORY NEGLIGENCE.

Recovery for the death of a car repairer knocked down and killed by
cars being shunted against a car while he was testing part of its coupler
is precluded on the ground of contributory negligence, where, when the
accident occurred, he was violating a rule that, when cars were being
shunted, work should not be done upon cars without first obtaining per-
mission of the foreman of the yard to put up a flag to indicate the work-
man's presence under or about the car; decedent having known that
shunting was being done, and it not appearing that the rule had been
previously violated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Serv-
ant, §§ 759–775.]

2. APPEAL—REVIEW—INSUFFICIENT BILL OF EXCEPTIONS.

Whenever a litigant proposes to ask an appellate court to review the
testimony and to determine whether there was any evidence to warrant
a recovery or to support a particular defense, he should cause a state-
ment to be inserted in the bill of exceptions showing affirmatively that
it contains all the testimony that was heard or produced at the trial. In
the absence of such a showing, an appellate court must presume, in aid
of the verdict, that there was testimony to support it, and that it would so
appear if all the evidence had been incorporated into the record.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error,
§§ 2916, 2917.]

In Error to the Circuit Court of the United States for the Dis-
trict of Vermont.

See 129 Fed. 163.

This cause comes here upon a writ of error to review a judgment of the
Circuit Court in favor of defendant in error, who was defendant below. The
action was brought to recover for the death of plaintiff's intestate, a car re-
pairer in the service of defendant, who was run over and killed by a car which
he was inspecting at Richford Station, Vt. It is charged that the accident
was caused by defendant's negligence. At the close of defendant's evidence
the defendant moved the court to direct a verdict in its favor upon 10 separate
grounds, which were set forth in a written notice. The court granted the mo-
tion and directed a verdict in favor of defendant upon the ground that plain-
tiff's intestate was acting at the time of the injury complained of in dis-
obedience of the rules and instructions of the defendant, which disobedience
directly contributed to the injury complained of, to which ruling plaintiff duly
excepted.

Max L. Powell, for plaintiff in error.

F. E. Alfred and W. B. C. Stickney, for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. This cause was before this court (Ca-
nadian Pacific R. W. v. Elliott, 137 Fed. 904, 70 C. C. A. 242) on a
writ of error to review a former judgment in favor of the plaintiff, and
the facts relevant to the questions now before us may be best set forth
in excerpts from our former opinion:

"Besides the main line there are at Richford several sidings numbered, re-
spectively, 1, 2, etc. A few minutes prior to the accident a through freight

train from Montreal had pulled into the yard. It was necessary to cut some cars out of it. Two cars which had been in the middle of the freight train were first sent down siding No. 1 in charge of one Sears as rear brakeman. After they were brought to a standstill, he returned to the train, and five cars located just in front of the caboose were cut out and kicked back on the same siding. Sears rode those also, and they came with great force against the other two cars, driving them back a considerable distance. Deceased and a car inspector, Green, had been examining a freight train which had drawn into the yard on the next siding, No. 2. They had finished that job, and were on their way back to the station to await the next job, when they drew near to the rear of two cars on siding No. 1. Elliott (the deceased) suggested that they should test the 'knuckle'—a part of the coupling—of the rear car. Both of the men thereupon stepped in behind the car, where they would be hidden from the view of any one 'riding down' any cars moving towards them on siding No. 1. The testing of the knuckle is an operation very quickly performed, but before they had finished it the five cars struck the two, and, as the latter moved backward under the impact, deceased was knocked down, run over, and killed."

It was contended by plaintiff that the accident was caused by Sears' improper handling of the five cars; that he was not a proper, efficient, and competent brakeman; and that defendant was negligent in intrusting such an operation to so incompetent a man. Upon the former appeal the case was disposed of on that branch of it which dealt with contentions of defendant that Elliott was himself guilty of negligence which caused the accident. It appeared that for a considerable time prior to August 10, 1901, the company's book of rules and regulations for the guidance of its employés contained rule 14, which provided that, when it was necessary "for car inspectors to work under a car," they must protect themselves by attaching to the car a red flag by day or a red light by night. This rule was on August 10, 1901, superseded by a new one which was substituted for it in a revised book of rules and which read as follows:

"Rule 26. A blue flag by day and a blue light by night, displayed at one or both ends of a car, engine, or train indicate that workmen are under or about it. When thus protected it must not be coupled to or moved. Workmen will display the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals, without first notifying the workmen."

No subsequent change was made in the rule prior to the accident which happened August 7, 1902. Upon the occasion in question when Green and Elliott stepped in behind the car and proceeded to test the knuckle no flag was put upon the car. The survivor, Green, when asked, on this trial, why this was, replied that he "couldn't tell why he didn't put up a flag."

Upon the former trial plaintiff undertook to prove that this rule had been so frequently and continuously disregarded, when merely the inspection of a knuckle was involved, as to make it a dead letter and disobedience of it no ground for imputing contributory negligence. The court on the former trial left that question to the jury upon all the evidence and the judgment in favor of plaintiff was reversed, because of error in the admission of evidence on that branch of the case. It will be observed that under the earlier rule the display of a signal was required only when car inspectors were at work under a car, while under the latter rule (26) such signals were called for when

workmen "are under or about it [the car]." The trial judge had admitted a very great deal of testimony showing the practice in this yard for a time long anterior, not only to the accident, but also to the amendment of the rule, and had sent it to the jury without any instructions or caution that so much of it only was relevant as indicated the practical construction put upon the amended rule. The judgment was reversed because "in our opinion there was not sufficient testimony to take the case to the jury on any theory that rule 26 had been waived by the company, or had been so frequently disobeyed, without effort to enforce it, as to have become a dead letter which the deceased could disregard without assuming the risk resulting from his disobedience of its provisions."

Upon the trial now under review the testimony on this branch of the case came in differently; and it is assigned as error that the court did not leave the question as to waiver of the rule to the jury. It is also contended that the rule should not be construed to cover knuckle testing; and error is also charged in the exclusion of testimony showing the practice in the yard subsequent to the accident. The bill of exceptions contains excerpts from the testimony accompanied with the statement that they "comprise all the testimony on this point, and are not qualified by anything else in the evidence." "This point" is "as to a custom in the yard of testing knuckles without putting up a ·flag before the adoption of rule 26." Although this statement as to the evidence would seem to warrant an inquiry by this court touching such assignments of error as are concerned with rule 26, it would be profitless to enter into it, because the direction of the verdict was not based solely upon the violation of rule 26, but was based also upon the "violation of one rule that there isn't the slightest evidence tending to show was ever violated in this yard," as the trial judge expressed it.

The bill of exceptions contains this statement:

"It appeared from the plaintiff's evidence, ·and was uncontradicted, that it was an established rule of the company that, when the shunting crew were at work shunting cars, no work should be done or attempted upon any of the cars without first obtaining permission of the foreman of the yard to put up the flag, and this rule applied to the two cars on siding No. 1 by the movement of which the plaintiff's intestate lost his life. There was no evidence that this rule had ever been violated, except on the occasion of the accident to Elliott."

In so much of the evidence as has been included in the bill of exceptions there is testimony warranting the conclusion, expressed by the judge in disposing of the case, that "the shunting crew was out there and both these men [Elliott and Green] knew it." Upon this state of facts the direction of a verdict for the defendant was not error.

Plaintiff in her brief—referring to the above quotation from the bill of exceptions as to uncontradicted evidence of an established rule of the company forbidding any work on a car when the shunting crew was at work—quotes the statement of one witness that it was not customary in the yard for inspectors, when about to test a knuckle, to go to the yard foreman and ask leave to put up a flag. But there are no excerpts of testimony bearing on this shunting rule, or custom, and no statement that all the testimony on this point of the case is contained in the record. Moreover, an examination of the whole bill of excep-

tions shows that it does not contain all the evidence. In which respect this case differs from Gunnison Co. v. Rollins, 173 U. S. 262, 19 Sup. Ct. 390, 43 L. Ed. 689. The rule is well settled that:

"Whenever a litigant proposes to ask an appellate court to review the testimony and to determine whether there was any evidence to warrant a recovery or to support a particular defense, he should cause a statement to be inserted in the bill of exceptions showing affirmatively that it contains all the testimony that was heard or produced at the trial. In the absence of such a showing an appellate court must presume, in aid of the verdict, that there was testimony to support it, and that it would so appear if all the evidence had been incorporated into the record." Taylor-Craig Corp. v. Hage, 69 Fed. 581, 16 C. C. A. 339; U S. Mutual Acc. Co. v. Robinson, 36 U. S. App. 690, 74 Fed. 10, 20 C. C. A. 262.

Without all the testimony on those points before us, we cannot tell whether or not the trial judge erred in holding that the deceased met his death by reason of his failure to obey a rule, which forbade him to manipulate the knuckles of cars with which a shunting crew was at work, which rule had never been violated before this accident, and that deceased knew the crew was at work when he disobeyed the rule. If he did not err in so holding, his conclusion that the accident happened through contributory negligence of the deceased is fully warranted.

All other exceptions relate to admission or rejection of testimony bearing on the defendant's negligence and need not be discussed. The judgment is affirmed.