## ALPHA PORTLAND CEMENT CO. v. CORSI et ux.

### (Circuit Court of Appeals, Second Circuit. January 11, 1916.)

### No. 68.

1. MASTER AND SERVANT ⬿285—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

In an action for the death of an employé, caused by contact with a revolving shaft containing an unguarded collar and set screw while he was oiling certain bearings, in which defendant claimed that the machine could have been readily stopped by pressing a button, and that all employés, including deceased, were forbidden to oil the machinery without shutting it down by cutting off the electric current, evidence as to whether any such instructions were given, and whether it was the custom or practice to stop the machinery for the purpose of oiling it, *held* to make a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. ⬿285.]

2. MASTER AND SERVANT ⬿209—LIABILITY FOR INJURIES—FAILURE TO GUARD MACHINERY.

Notwithstanding Factory Act Pa. May 2, 1905, § 11 (P. L. 355), requiring all gearing, belting, shafting, set screws, etc., to be properly guarded, an employer might have made a revolving shaft containing a collar and set screw safe without guarding it, by placing it where no workman could approach it, except to oil it, and then requiring it to be stopped before oiling was attempted; but, if it chose this method as an alternative for the statutory one, it should have been scrupulously careful to make its substituted method efficient.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 552, 553; Dec. Dig. ⬿209.]

In Error to the District Court of the United States for the Southern District of New York.

Action by Ilario Corsi and wife against the Alpha Portland Cement Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

This cause comes here upon writ of error to review a judgment in favor of defendants in error, who were plaintiffs below. The action is brought by the parents of Silvio Corsi, who was killed in defendant's mill at Martin's Creek, Pa.

L. H. Porter, of New York City, for plaintiff in error.

H. S. Bird, of New York City, for defendants in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The action is brought under a Pennsylvania statute allowing such action to be brought by the parents of a person killed by negligence. Deceased on the day in question was engaged in oiling machinery in the mill. He met his death by coming in contact with a revolving shaft containing a collar and a set screw, which were wholly unguarded. The Pennsylvania Factory Act (P. L. c. 226, § 11, May 2, 1905) provides that:

"All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws, grindstones, emery wheels, flywheels, and machinery of every description shall be properly guarded."

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] There was no eyewitness of the accident, but the time, circumstances, position of the body, and condition of the clothes leave no doubt as to how the accident happened. The unguarded shaft was on a platform reached by a ladder; there was no occasion for deceased to go on that platform, unless he intended to do something in connection with the machinery there. He did have occasion to go there at stated times in order to oil certain bearings. The defense was contributory negligence in that deceased went upon the platform in disregard of express instructions, and that he chose a dangerous method of doing his work, although a safe one was open to him.

The particular machine was one of a series run by electricity; it could be readily stopped merely by pressing a button convenienty located on the floor below the platform. Such temporary disconnection would not interfere with the rest of the plant. The testimony for defendant tended to show that to all, including deceased, instructions had been given, forbidding any one from undertaking to oil the machinery until after he had shut it down by cutting off the electric current, which ran it; also that deceased had on one occasion repeated these instructions to another man, who was about to take his place temporarily. Plaintiff in error relies on our decisions in Canadian Pacific R. R. v. Elliot, a cause which came twice before this court. 137 Fed. 904, 70 C. C. A. 242; 161 Fed. 250, 88 C. C. A. 286. It may be noted that in the Elliot Case the controversy was whether the rule had been so frequently and notoriously disregarded as to have become a dead letter. Of the promulgation of the rule there was not a particle of doubt. In its original or amended form (the amendment making it more efficient to insure safety) it had been in force for years. It was printed and included in the book of rules with which the deceased had been supplied and a copy of which was found on his body.

It is not necessary to state the facts in the case at bar more fully. While we think that plaintiff's case was a weak one, and are inclined to put little reliance on the testimony of their main witness, Read, nevertheless, with his evidence in the case, there was conflict as to vital issues, which could not be taken from the jury. He testified that he never knew the machinery to be stopped for the purpose of oiling during the entire eight years it was there; that he never knew of any orders being given to stop it for the purpose of oiling, nor of any custom or practice to stop it for that purpose; that he had seen it oiled while in operation repeatedly. There was also testimony that, in order to find out if oiling was necessary, one would have to go to it and feel if the bearings were hot. The witness who testified that deceased told him always to shut down before oiling was a Hungarian, who testified through an interpreter; deceased was an Italian, and the record is somewhat vague as to how the one communicated instructions to the other.

[2] Weak though plaintiff's case was, its weight was for the jury to determine. If the result be hard on defendant its own laxity is the cause of such result. Concededly it did not guard this shaft as the statute required. Although it did not so guard it, it might make it safe by placing the machine where no workman could approach it

except to oil it, and then requiring it to be stopped before oiling was attempted. But if it chose that method as an alternative for the statutory one, it should have been scrupulously careful to make its substituted method efficient. This it might easily have done. Had it posted a notice conspicuously near the unguarded shaft, forbidding any one to undertake to oil it, or to come close to it, unless he first stopped the machine, on pain of dismissal for disobedience, and had it further been careful to make such notice intelligible to the polyglot workmen whom it employed, its situation at the trial would have been different. As it is the finding of the jury on controverted questions cannot be disturbed.

Judgment affirmed.