MITCHELL COUNTY V. CITY NATIONAL BANK OF PADUCAH, KENTUCKY.

Delivered January 28, 1897.

**1.   County Bonds—Creation of Sinking Fund—Constitutional Validity.**

The failure of the Commissioners Court to make an express provision for the creation of a sinking fund, as required by section 7, article 11, of the Constitution, does not invalidate bonds issued by it for the erection of public buildings, under the Acts of February 11, 1881, and of February 4, 1884, since the Constitution and general statutes already make provision for such levy, and the duty of the Commissioners Court in the matter is a purely ministerial one.

**2.   Same—Recitals—Right of Purchaser to Rely Thereon.**

A purchaser of county bridge bonds is entitled to rely on the recitals therein as to the purposes for which, and the acts under which, they were issued, and is not chargeable with notice of the fact that they were not intended to be used for the building of bridges, but to be diverted to the purpose of building a court house.

**3.   Same—Excessive Issue—Legislative Validation.**

The Legislature has no power to validate an over-issue of county bonds, where it was without power at the time of the over-issue to authorize such an issuance.

APPEAL from Mitchell. Tried below before Hon. WILLIAM KENNEDY.

*R. H. Looney* and *Smallwood & Smith*, for appellant.

*Millard Patterson*, for appellee.

*M. M. Crane*, Attorney General, *W. M. Knight* and *E. P. Hill*, for the State of Texas.

A writ of error was granted in this case, and a synopsis of the briefs of counsel will appear in connection with the case in the Supreme Court Reports. Mitchell County v. Bank, 91 Texas, 361. The action of the Supreme Court is stated at the end of the opinion herein.

TARLTON, CHIEF JUSTICE.—His honor has filed elaborate conclusions of fact in this case, which appear in the record, and which we adopt. To avoid unnecessary repetition, we abstain from setting them out in extenso.

The appeal by the County of Mitchell is from a judgment recovered against it by the appellee, the City National Bank of Paducah, Kentucky, in the sum of $3698. This amount represents the interest found by the court to be due in accordance with coupons attached to certain bonds issued by the County of Mitchell.

The County of Mitchell, having no court house and jail, entered into a contract with Martin, Byrne & Johnston for the erection of these buildings. The bonds in question were issued in payment of these buildings. Some of them are designated as court house bonds, and others as road and bridge bonds. They were made payable to Martin, Byrne & Johnston or bearer. They were purchased in the open market by the appellee, in the regular course of business, for full value, and be-

fore maturity, without actual notice of any defect in them, unless there be defects shown by the minutes of the Commissioners Court which caused their issuance, of which the appellee was bound to take notice, whether the minutes were inspected or not, or unless there be such defects in them as will affect any purchaser.

The court house bonds each recited that it was issued in accordance with the provisions of an act of the Legislature of the State of Texas, entitled, "An Act authorizing the County Commissioners Courts of the several counties of this State to issue bonds for the erection of a court house, and to levy a tax to pay for the same," approved February 11, 1881. The bridge bonds each recited that, "This bond is issued for the purpose of obtaining money to buy and construct bridges for public uses within the said County of Mitchell, in pursuance of an act entitled, 'An Act to authorize counties to issue bonds for bridge purposes, and to levy a tax to pay the same,' passed at the special session of the Eighteenth Legislature, convened at the City of Austin, Texas, January 8, and adjourned the 6th day of February, 1884." The principal of the court house bonds matured in fifteen years; that of the bridge bonds, in twenty years. The interest, at a specified rate, upon each of the bonds is payable annually. All of the bonds were signed and executed by the proper officers of the county, and were registered by the treasurer of the county, under the direction and order of the Commissioners Court. The Commissioners Court of Mitchell County has never made any provision for a tax to raise a sinking fund to pay the bonds and the interest thereon.

We thus dispose of the several questions presented by the parties respectively.

1. We have seen that the Commissioners Court of Mitchell County has never made any provision for a tax to raise a sinking fund to pay the bonds in question and the interest thereon. Upon the fact of this omission the appellant predicates its contention that the bonds are void.

In support of its insistence, it invokes section 7, article 11, of our State Constitution, which reads thus: "All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized, upon a vote of two-thirds of the tax-payers therein (to be ascertained as may be provided by law) to levy and collect such tax for construction of sea walls, breakwaters, or sanitary purposes, as may be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for."

The clause of this section dwelt upon by the appellant is that which prescribes that, "no debt for any purpose shall ever be incurred in any

manner by any city or county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay all interest thereon and provide at least two per cent as a sinking fund."

The Attorney-General has, by permission of this court, filed an argument herein, on the ground that the State has a special interest in the question involving the validity of these bonds, as the permanent school fund holds a great many county bonds similarly situated. In this argument the proposition is ably pressed, that the section of the Constitution just quoted applies exclusively to counties bordering on the coast of the Gulf of Mexico. We deem it unnecessary to pass upon the merits of this proposition. We treat the subject as if the section applies to all counties indiscriminately.

Hence the question may be thus stated: At the time of creating the debt or issuing the bonds in question, was provision made for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund?

When the court house bonds were issued, in 1881, counties were authorized by section 9, article 8, of the Constitution, to levy a tax for the erection of public buildings, not to exceed 50 cents on the $100 in any one year. Sayles' Annotated Constitution, p. 560.

When, in 1884, the bridge bonds in question were issued, counties were authorized to levy a tax not to exceed 15 cents for roads and bridges on the $100 valuation. Idem.

Section 2, article 11, of the Constitution, provides that, "The construction of jails, court houses and bridges, and the establishment of county poor houses and farms, and the laying out, construction and repairing of country roads shall be provided for by general laws."

In manifest compliance with the terms of this section, the Seventeenth Legislature adopted the Act, approved February 11, 1881 (see Sayles' Civil Statutes, art. 986a, and notes), authorizing the County Commissioners Court of any county without a court house to issue bonds, with interest coupons attached, in such amount as may be necessary, to erect a suitable building for a court house, the bonds to run not exceeding fifteen years, redeemable at the pleasure of the county and bearing interest at a rate not exceeding eight per cent. By the second section of this Act, the Commissioners Court of the county was required to levy an annual ad valorem tax on the property in the county, sufficient to pay the interest and create a sinking fund for the redemption of the bonds, not to exceed one-fourth of one per cent for any one year.

Under the terms of this enactment the court house bonds here involved were issued by the County of Mitchell. It is not pretended but that, as to the obligations here adjudged to be valid, the exercise of the taxing power, within the constitutional limitation, upon property situated in Mitchell County, for the amount prescribed and required by this enactment, would be sufficient to pay the interest accruing upon the bonds and provide at least two per cent as a sinking fund.

So, also, in manifest compliance with section 2 of the Constitution

above set out, the Eighteenth Legislature adopted the Act of February 4, 1884, by the first section of which the County Commissioner's Courts were authorized to issue bonds, with interest coupons attached, for the purpose of constructing bridges for the use of the county, and by the second section of which the Commissioners Court was required to levy an annual ad valorem tax not to exceed 15 cents on the $100 valuation, sufficient to pay the interest on and create a sinking fund for the redemption of the bonds. See Sayles' Civil Statutes, art. 986b, and note.

The bridge bonds here involved were issued under the terms of this enactment, and it is not pretended as to those obligations here adjudged to be valid, but that the exercise of the taxing power within the constitutional limit, and in accordance with the terms of the enactment, would suffice to pay the interest upon the bonds and provide at least two per cent as a sinking fund.

When the obligations sued upon were issued by the county to Martin, Byrne & Johnston, the foregoing constitutional and statutory provisions became a part of the county's contract of indebtedness. They inhered, as it were, in the obligations themselves. They became obligations on the part of the county beyond the impairing or repealing power of any legislation.

In other words, in the issuance of the bonds the county contracted, in the light of these constitutional and statutory provisions, that it would levy an annual ad valorem tax sufficient to pay the interest upon the bonds and to provide at least two per cent as a sinking fund. The discharge of this duty on the part of the tax officers of Mitchell County became purely ministerial, and subject to enforcement by the remedy of mandamus. Had the Commissioners Court of Mitchell County, at the time of the issuance of these bonds, entered upon its minutes a resolution stating the purpose of the county to levy annually a tax sufficient to pay the interest upon the bonds and provide at least two per cent as a sinking fund, the measure of the county's obligation, under the appellant's theory, would have been complete, and the bonds in all respects valid. Yet of what possible efficacy would have been a mere resolution of this character? Without the constitutional and statutory provisions above recited, it would have been wholly useless; with them, it would be but the expression of a duty which already fully existed, and would be entirely unnecessary. In the one condition, such a resolution would be fruitless; in the other, superfluous.

We conclude upon this question that, when the bonds were issued by the County of Mitchell, it may be stated with substantial accuracy that a provision was made by the Constitution and the laws of the State, at the time of creating the indebtedness, "for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund," and that the requisites of section 7, article 11, of the State Constitution, were fully met.

On a proposition of the character presented, the benefit of any doubt

that might be entertained should be extended to the validity of a contract of which the appellant has reaped the benefit, and against the repudiation of a debt the moral sacredness of which is undisputed.

Our attention is invited to the line of decisions of our Supreme Court, beginning with the case of the City of Terrell v. Dessaint, 71 Texas, 770, in which it has been uniformly held, perforce of section 7, article 11, above set out, and also of section 5 of the same article of our Constitution, that no debt can be created by any city in this State, unless at the time of creating the debt provision be made by the city council to assess and collect annually money to pay interest and create a sinking fund.    We are also cited to the case of Quaker City National Bank v. Nolan County, 59 Fed. Rep., 661, in which the doctrine as applicable to cities is held also to obtain as to counties.

We are not, however, bound by the case last cited as authority, and we are not disposed to recognize an analogy between the case in which the question is presented as to counties and that in which it is presented as to cities.

In the case of Terrell v. Dessaint, supra, Justice Gaines, speaking of the object of the constitutional provisions prescribing the conditions upon which cities could create indebtedness, uses this language:    "At the time the Constitution was framed, the history of the country and of the State afforded examples of municipal corporations which had become bankrupt through the reckless and extravagant management of their governing bodies, and its framers doubtless had under consideration the evils which result, both to the taxpayers and the creditors of such corporations, from an unlimited power to create debts.    From article 8, on taxation, and article 11, on municipal corporations, they seem to have kept prominently in view two objects; the one to protect the inhabitants of municipalities against oppressive taxation, the other to protect the creditors and to preserve the financial honor of such corporations.    The first was sought to be accomplished by section 9 of article 8 (since amended in pursuance of its original policy and spirit), which fixes the limit of taxation and defines the purposes for which taxes may be assessed.    The second was intended to be attained by the section last named, in connection with the provisions quoted from sections 5 and 7 of article 11, which limit the power of creating debts, by making it proportionate to the power of taxation."

With reference to counties, both the puposes here emphasized have been attained in regard to the bonds in question, and all similarly situated, by the safeguards furnished in the articles of the Constitution to which we have already adverted, and by the Act of 1881 and its amendments, in relation to court house bonds, and the Act of 1884 and its amendments, in relation to bridge bonds.    By these enactments a fund has, in effect, been set apart by the legislative authority out of which the counties are required, within the prescribed tax limits, to raise the money with which to meet the principal and interest upon the obligations. . Not so, however, in the case of cities, where, though the

power is vested in the city council to borrow money upon the credit of the city, and to issue coupon bonds therefor, the task of providing a fund out of which to pay the interest and create a sinking fund for the redemption of the bonds is yet imposed upon the city whenever such debt shall be created. Rev. Stats., arts. 420, 421.

In other words, in the case of a county, whenever bonds are issued for the purposes specified, the Legislature has already appropriated a a fund for their redemption. The levy and collection of the tax by the Commissioners Court is a mere ministerial duty imposed by the law. In the case of a city, upon the issuance of bonds, the fund has not already been set apart, but rests with the council.

· The case of Nolan County v. State, 83 Texas, 183, while not decisive upon the conclusion announced by us, is to some extent persuasive in that direction. The suit in that instance was instituted by the State to compel the levy of a tax by the Commissioners Court of Nolan County to pay the interest on bonds similar in character to those herein considered, long after the issuance of the bonds. In that instance, also, there was an absence of any order on the part of the Commissioners Court making the provision here relied upon. The validity of the bonds was upheld by our Supreme Court, a result which we think would hardly have been announced if the plaintiff was wholly without cause of action, on account of the omission of the Commissioners Court at the time of issuing the bonds to enter an order making a provision of the character in question.

2. In appellant's third assignment of error it is urged that certain bridge bonds therein named were erroneously held to be valid obligations on the part of the defendant, and that if the appellee had inspected the orders made by the Commissioners Court, by virtue of which the bonds were issued, it would have discovered their illegality from the recitals of these orders; that it is chargeable with notice of these orders, and hence cannot occupy the attitude of an innocent purchaser.

As we have seen, these bonds recite that they were issued for the purpose of obtaining money to buy and construct bridges for public uses within the County of Mitchell, in pursuance of an act entitled "An Act to authorize counties to issue bonds for bridge purposes, and to levy a tax to pay the same," passed at the special session of the Eighteenth Legislature, convened at the City of Austin, Texas, January 8, and adjourned the 6th day of February, 1884. At their date Mitchell County was authorized by law to issue bonds of this character for the purpose of buying or constructing bridges for public uses within the county. The bonds purport to be negotiable obligations of the county. The plaintiff paid value for them, relying upon their recitals, and without actual knowledge of their illegality.

We do not think, under the circumstances stated, that the purchaser was required to examine the orders of the Commissioners Court for the purpose of testing their validity. "He had the right to rely upon the truth of the recitals upon the face of the obligations, and having paid

value for the bonds, without actual knowledge of their illegality, the county would be estopped to set up that they were not issued for the purpose for which they purported to be issued." Nolan County v. State, 83 Texas, 194, 195.

3. The court below in part condemned a certain number of the bonds in question, and its action forms the subject of a cross-assignment by the appellee.

In its conclusion announcing the invalidity complained of, the court found as a fact that, to the extent of the invalidity, there had been an over-issue of the bonds, by which we understand an excess beyond the tax limit fixed by the Constitution. Of this finding of fact there is no complaint, but it is contended by the appellee that the defect was cured by certain validating acts adopted by the Legislature in 1885.

At the time of the excess in the issuance of the bonds, the Legislature was, under the Constitution, without power to authorize such an issuance; and we are of opinion that, under such a condition, the invalidity or nullity of the obligations could not be removed by curative legislation. The cross-assignment is overruled.

We are thus led to an affirmance of the judgment, which is ordered.

*Affirmed.*

Writ of error granted by Supreme Court, and upon hearing, the proposition stated in the first headnote above, affirming the validity of the court house bonds, was sustained, but for error in relation to the bridge bonds mentioned in the second headnote, the judgment was reversed;—the Supreme Court holding that the records of the Commissioners Court showed the illegal purpose for which they were intended sufficiently to charge a purchaser of them.