THE BOARD OF PUBLIC INSTRUCTION, DADE COUNTY, *et al.*,
v. STATE, *ex rel.* TANGER INVESTMENT COMPANY.

164 So. 697.
Case No. 2.
Opinion Filed October 11, 1935.
Rehearing Denied December 3, 1935.

*Peters & Kemp*, for Plaintiffs in Error;
*Julian E. Ross* and *George W. English, Jr.,* for Defendant in Error.

PER CURIAM.—This is a companion case to the case of The Board of Public Instruction for the County of Dade, State of Florida, a corporation, *et al.*, v. State of Florida, *ex rel.* Tanger Investment Company, a corporation of Florida, opinion filed this date, and the judgment is affirmed for the reasons stated for affirming the judgment in that case.

So ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL, BUFORD and DAVIS, J., J., concur.

BROWN, J., dissents.

## ON PETITION FOR REHEARING.
## No. 15848.

DAVIS, J.—That in truth and in fact a required bond election was actually called or held, when necessarily judicially found as a fact in bond validation proceedings, or certified

as a fact in the recitals of bonds that have been duly negotiated and passed into the hands of *bona fide* holders for value without notice, cannot be negatived or put in issue by the obligor on the bonds is a universal rule of law in this country. This is so, because the certification or recital of the existence *vel non* of a recitable fact (such as the fact that a bond election was held and what its result was) on the strength of the truth of which recital in the bonds such bonds were sold or negotiated, effectually estops the obligor from subsequently denying the truth of the recital, or thereafter refuting or denying the truth of facts such obligor must have averred in judicial proceedings to have such bonds validated, even though the recited or certified fact of the calling and favorable result of a bond election to authorize the issuance of the bonds may be altogether nonexistent, or the recital itself demonstrably false, as can be later shown by proof offered in a civil suit brought to enforce the bonds.

Special tax school district bonds are in all respects analogous to ordinary municipal bonds. This is true, because they are issued by a public corporation under its seal and pursuant to statutes which make them negotiable instruments when issued in accordance with the provisions of Section 17 of Article XII of the State Constitution and the statutes cognate therewith.

The rule as to the estoppel of the obligor on municipal bonds to deny that they were issued in conformity with, or by virtue of, certain statutes or constitutional provisions amounting to conditions precedent, is best stated in 19 Ruling Case Law, paragraph 303, page 1009, as follows, and is supported by the overwhelming weight of authority:

"A recital in municipal bonds that they are issued according to and in conformity with, or by virtue of, certain

statutes is equivalent to the representation that every pre-
liminary step required by these statutes to be taken as a
condition to the exercise by a public corporation of the
power thereby delegated to issue bonds has been properly
and legally taken, where the bonds are in the hands of in-
nocent holders, and the officers issuing them were expressly
or impliedly authorized to determine the questions to which
their recital relates. And the corporation is thereby es-
topped to assert, as a defense to the bonds, the failure on
the part of its officers to perform any of these preliminary
conditions, or any irregularity in such performance. Thus
it has been held that a recital in bonds issued by a city,
importing a compliance with the city charter in the issue
thereof, estops it to assert a non-compliance with the re-
quirement that a petition signed by a certain portion of
the freeholders within the corporate limits should be pre-
sented to the council before any bonds should be issued,
where the question of the presence of this petition and its
sufficiency was to be determined by the authorities who
issued the bonds. Such a recital also estops the munici-
pality from denying the validity of the bonds on the ground
that no election was held to authorize their issuance; that
there were irregularities in holding the election; that
a majority of the votes were not cast in favor of the issu-
ance of the bonds; that the corporation has issued more
bonds than the vote of the council authorized, or then were
authorized by vote of the people of the municipality, or
that the issue of bonds is in excess of the debt limit, unless
the truth of such recital depends upon a matter of public
record; that all the conditions which the statute requires
as a condition precedent to the issuance of the bonds has not
been performed, when the performance of such conditions
is a matter to be determined by the officers who issued the

bonds; that the delivery of the bonds held in escrow by a trustee was unauthorized, or that the municipality which issued the bonds was without corporate existence. It is, of course, essential to the legal effect of such a recital that it designate correctly the statute in conformity with which the bonds were issued, but an immaterial error in reciting the title of such statute will not affect the validity of the bonds."

The case of Weinberger v. Board of Public Instruction of St. Johns County, 93 Fla. 470, 112 Sou. Rep. 253, is not in point to sustain the objections of plaintiffs in error in this case, nor has that decision been overlooked, disregarded or overruled by this Court in its determination of this controversy, as petitioner for rehearing asserts in his petition.

In the Weinberger case, *supra,* the holding was that since Section 17 of Article XII of the Constitution affirmatively fixed unalterable requirements for the *maturities* of the bonds to be issued by special tax school district, that no *power* to issue bonds of different maturities existed, nor could the Legislature itself, by express enactment, lawfully authorize the issuance of bonds contrary to the express and mandatory provisions of the Constitution as to the required maturities, nor could the courts, acting under *legislatively conferred* jurisdiction in bond validation proceedings, curatively validate special tax school district bonds when same were void *ab initio* because attempted to be issued in direct violation of controlling mandatory organic provisions.

In that case the unconstitutional maturities of the bonds was necessarily apparent on the face of the validation proceedings. It was likewise obvious on the face of the bond authorization resolution and proceedings themselves, so no question of the rights of innocent holders of such invalid

bonds could ever have arisen, because the constitutional defect was so obvious, *as a question of law,* on the face of both the bonds and the recited bond validation proceedings, as to put the whole world on special notice thereof.

In this case, however, the question brought in issue is a question *of fact,* namely : the obligor's denial that an election was ever called or held *in fact* to authorize the bonds before such bonds were issued, although the fact of such an election was recited in the bonds. On this point, the alternative writ of mandamus alleges that such bonds had been judicially validated by the Circuit Court and had been issued by the Board of Public Instruction of Dade County on behalf of a Special Tax School District, containing the specific recital "that all conditions, acts and things essential to the validating exists, have happened and have been done in full compliance with law, and that this bond is within every limitation prescribed by the Constitution and laws of Florida, and that the faith, credit and assessable property of the said Special Tax School District No. 2 are hereby irrevocably pledged to the punctual payment of the principal and interest of this bond, in accordance with its terms." The alternative writ further alleges that the bonds, when issued, had endorsed on them the official validation certificate of the Clerk of the Circuit Court, as provided by Section 5110 C. G. L., 3300 R. G. S.

Now under the law, before bonds can be validated in·judicial proceedings instituted under Sections 5106-5111 C. G. L., 3296-3301 R. G. S., the obligor county, municipality or special taxing district proposing their validation must affirmatively allege in a petition for validation (Section 5107 C. G. L., *supra*) its authority for incurring the bonded debt represented by the bonds. It also must *specifically* allege the particular fact that an election has been held and

that such election was in favor of the issuance of the bonds, in all cases where an election is required by either the Constitution or the laws of Florida as a condition precedent to the valid issuance of such bonds.

It was therefore necessary for the obligor Board of Public Instruction in this case, when it petitioned for validation of the bonds in controversy in this suit, to aver and prove to the Circuit Court that a proper election authorizing the issuance of such bonds had been actually called and held in accordance with the Constitution, before it could reasonably expect the Circuit Court to enter a decree of validation. So the principal purpose to be accomplished by a decree of validation was to put this question, which was a question of fact the proof of which necessarily existed *de hors* the face of the bonds, in perpetual repose by means of the decree of validation and the endorsed certificate of validation which the statute required the Clerk of the Circuit Court to sign and endorse on each separate bond in attestation of the fact of judicial validation as written on the bonds by the proper officers of the issuing obligor.

Therefore, the necessary legal effect of the endorsed certificate of validation written on each negotiable bond in accordance with Section 5110 C. G. L., 3300 R. G. S., was to officially recite or certify to the *adjudicated* existence of every condition that in law or in fact can be constitutionally put in perpetual repose by a judicial validation decree, including those extrinsic facts constituting conditions precedent, such as the calling and holding of a proper bond election and the favorable result thereof authorizing issuance, so that "the validity of such bonds * * * shall never be called in question in any court in this State" (Section 5109 C. G. L., 3299 R. G. S.).

The Weinberger case, *supra,* expressly holds that questions of law and fact affecting the power of an issuing obligor to issue bonds may be so conclusively asserted and determined in validation proceedings as to be forever conclusive on the petitioner for validation where the petition for validation did not disclose that the bonds were void *ab initio,* such as was shown in that case where it plainly appeared throughout the proceedings from the authorizing resolution to and through the final decree of validation itself, that the intended *maturities* of the bonds there brought in question, were at distinct variance with the specific mandate of the Constitution on the subject.

Furthermore, in the Weinberger case, a taxpayer was the complainant who there attacked the decree of validation. He was not a party to the challenged validation decree on the record in that he had never intervened in the validation proceedings.

In this case, however, the objecting plaintiff in error is the very petitioner upon whose petition, and upon whose allegations of fact showing factual compliance with the constitutional requirement of an approving election, the certificate of validation was made, and the bonds issued by such petitioner, with an official certificate of validation attached. So at all events, even under the Weinberger case, *petitioner* is now completely estopped to negative its own representations as against the innocent holders of the bonds issued by it, whatever may be the justiciable legal rights of third party taxpayers who did not actually intervene in the bond validation proceedings or personally litigate therein as to the questions at issue.

The petition for rehearing is denied.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.

ELLIS, P. J., not participating.

BROWN, J. (dissenting).—Section 17 of Article XII of the Constitution provides that:

"The Legislature may provide for special tax school districts to issue bonds for the exclusive use of public free schools within any such special tax school district, whenever a majority of the qualified electors thereof who are freeholders shall vote in favor of the issuance of such bonds," and then follows some further provisions with reference to the debt limit, maturities of the bonds, etc., which are not pertinent here.

The exact question presented in this case was not involved in the case of Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, but the course of reasoning by which the Court reached its conclusion in that case is pertinent to the case at bar, as will appear from the following quotations from the opinion of Mr. Justice STRUM speaking for the Court in the cited case:

"Since our validation statute (Sec. 3296, *et seq.*) was adopted largely from the Georgia statute on the same subject, appellees cite several Georgia cases construing the statute in that State. In none of these cases, however, was it decided that a taxpayer, otherwise entitled to raise the question, was precluded by a validating decree, rendered pursuant to the statute, from subsequently questioning the validity of bonds issued in violation of a mandatory constitutional provision, and hence void *ab initio*. In Smith v. Mayor, etc., of the City of Dublin, 39 S. E. Rep. 327, referred to in the Florida case of Thompson v. Town of Frostproof, *supra,* the questions involved were, first, the sufficiency of the notice calling an election to determine whether the bonds should be issued. The election is required by the Constitution, but the notice, and the contents

thereof, are prescribed by statute only, so that a non-compliance with the statute might render the bonds irregular and voidable, but not void. The second question was the sufficiency of the notice to the Solicitor General of the result of such election, which notice is also prescribed by statute. The following language also used in that case is pertinent here: 'Certainly, it was never the intention of the General Assembly that bonds which had not received the assent of the number of voters, as required by the Constitution, could be validated.'

"The question involved in Woodall v. Town of Adel, 50 S. E. Rep. 102, also involved the legality and sufficiency in law of the notice calling the election, but no question of the violation of a mandatory constitutional provision was presented.

"In Lippitt v. City of Albany, 63 S. E. Rep. 33, certain constitutional questions were presented, which concerned the constitutional validity of the validation statute. The only questions therein raised against the validity of the bonds themselves were matters of mere irregularity, which the Court held should have been raised in the validation proceedings. In that case it was further said:

" 'Some of the grounds assert unconstitutionality in the Act referred to (the validating statute), on the contention that it seeks to confer power on counties and municipalities to incur debt without the consent of two-thirds of the voters thereof (as required by the Constitution of Georgia), by attempting to confirm and authorize an issue of bonds which may not have been authorized by the necessary two-thirds vote; and that the Act seeks to rise superior to the Constitution and preclude inquiry into the validity of the bonds on such a constitutional ground: * * * This contention is based on a misconception of the purpose of the Act of 1897.

It was not the purpose to validate invalid or irregular bonds.'

"Distinctions, similar to those above pointed out, are apparent in other Georgia cases cited by appellees, as well as in the Oklahoma case of State v. West, 118 Pac. Rep. 146. * * *

"The principle is well established that where the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done, is itself a prohibition against a different manner of doing it. Holland v. State, 15 Fla. 455, text 523. See also Grantham v. Board of Public Instruction, 77 Fla. 540, 82 South. Rep. 52. Therefore, when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the constitutional provision. State, *ex rel.* Murphy, v. Barnes, 24 Fla. 29, 3 South. Rep. 433; State, *ex rel.* Church, v. Yeats, 74 Fla. 509, 77 South. Rep. 262. See also: Cooley's Const. Lim. (7th Ed.), p. 114; Coleman v. Town of Eutah, 47 South. Rep. 703; 5 Texas 418; District Township v. Dubuque, 7 Iowa 262." * * *

"The Legislature itself, even by express enactment, could not lawfully authorize the issuance of bonds contrary to the express and mandatory limitations of the Constitution, nor could the Legislature by subsequent Act, nor the Courts by decree, validate bonds which are void *ab initio* because issued in violation of controlling mandatory organic limitations. *If the Legislature, by a validating Act, or the Courts by procedure and decree authorized only by legis-*

*lative enactment can vitalize bonds issued in violation of constitutional mandate, then such legislative or judicial action would overreach the Constitution, and the organic provisions, contrary to which such bonds were issued, would be futile.* See Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716; Munroe v. Reeves, 71 Fla. 612, 71 South. Rep. 922. 'The general and established proposition is that, what the Legislature could have authorized, it can ratify, if it can authorize at the time of ratification.' Charlotte Harbor & Northern Ry. Co. v. Welles, 260 U. S. 8; 67 Law·Ed. 100, affirming *idem,* 78 Fla. 227, 82 South. Rep. 770. See also Givens v. County of Hillsborough, 46 Fla. 502, 35 South. Rep. 88. See also 5 McQuillin Munic. Corp (1913), Section 2310, and cases cited. * * *

"In deciding that question it must be borne in mind that there is a vital distinction between *an entire absence of power* under the Constitution to issue the bonds involved—which no Act of the Legislature may remedy—and the *imperfect or irregular exercise of lawful authority* in the issuance of the bonds. Deficiencies of the latter character may be waived, or the complaining taxpayer may estop himself with reference thereto. Such deficiencies may be cured by validation proceedings pursuant to Section 3296, *supra.* The Legislature, by a curative statute, may even validate bonds originally issued without authority, provided the Legislature could have authorized the issuance of the bonds in the first place. See State, *ex rel.* Nuveen, v. Greer, *supra.* But when bonds are issued in violation of a mandatory provision of the Constitution, as for instance, when in excess of the debt limit fixed by the Constitution (See Mitchell County v. City National Bank, 39 S. W. Rep. 628, reversed on other grounds, 43 S. W. Rep. 880) ; *or when such bonds have not been authorized by a two-thirds*

*vote of the people, as required by the Constitution* (See Katzenberger v. Aberdeen, 121 U. S. 172; 30 Law Ed. 911; Sykes v. Columbus, 55 Miss. 115), or, as in the case before us, where the maturities fixed by the issuing body are contrary to the express requirement of the Constitution, such bonds are void *ab initio,* and cannot be validated by curative legislation." (Italics supplied.)

See also City of Fort Myers v. State, 95 Fla. 704, 117 So. 97.

On page 995 of 19 R. C. L., the following appears:

"The evils which resulted from the frequent grant by many of the State Legislatures to municipal corporations of unlimited power to issue negotiable bonds led many of the States to adopt constitutional provisions either prohibiting the issue of municipal bonds for certain purposes or imposing various safeguards and restrictions upon the issue of such bonds, and it is well settled that bonds issued in contravention of such constitutional provisions are void."

In the footnote to the foregoing text two decisions of the Federal Supreme Court are cited. And on page 997 of the same work the following language appears:

"One of the common requirements of the Constitutions or statutes of many of the States is that the question of issuing bonds be submitted to the vote of the people of the municipality, and in such case unless the question is submitted in the manner prescribed and the electors approve the issuance of the bonds they cannot lawfully be issued. One of the essentials of a valid election is that it shall be called by competent authority, and it is also necessary that notice of the election be given in the manner prescribed by law stating in a general way the purpose for which it is proposed to issue the bonds and the amount to be issued. The burden of proof is on the holder of the bonds to show

that the vote was in favor of their issuance, but it has been held that he may rely upon the records of the proper election officers, and is not bound to show that all the persons who voted at the election were entitled by law to vote."

And on page 1006 of 19 R. C. L., it is said:

"When a municipal corporation having no power under any conditions to issue bonds of a certain character or for a certain purpose nevertheless issues them, it is not liable on such bonds, even when they are in the hands of a *bona fide* purchaser for value, and no principle of estoppel by recitals in the bonds or otherwise can make it liable."

This proposition is supported by a citation of numerous decisions in the footnote.

In State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, this Court, speaking through the present Chief Justice, said:

"Where bonds are issued pursuant to a valid statute mere irregularities in issuing the bonds may not affect their validity. County of Jefferson v. B. C. Lewis & Sons, 20 Fla. 980. But when a statute violates the Constitution in authorizing bonds to be issued, the statute being inoperative as authority for their issue, the bonds are void (State, *ex rel.* Bours, v. L'Engle, 40 Fla. 392, 24 South. Rep. 539; Holland v. State, 15 Fla. 455); and the courts may enjoin their issue (Brown v. City of Lakeland, 61 Fla. 508, 54 South. Rep. 716), or their payment. Munroe v. Reeves, 71 Fla. 612, 71 South. Rep. 922."

And further on in the same opinion it was said:

"The doctrine of estoppel is a part of the common law that is in force in this State and it should be appropriately applied when the facts in a litigated case justify it. But the principle of estoppel does not operate to confer authority, though it may under some circumstances be invoked

to preclude a denial that authority conferred was duly exercised. See 19 R. C. L., p. 1000. While a municipality may be estopped to deny that the authority to issue bonds given by a valid statute was not properly exercised, in issuing bonds to *bona fide* holders for full value (County of Jefferson v. B. C. Lewis & Sons, 20 Fla. 980), yet a municipality will not be estopped from denying the validity of a statute under which bonds were issued even to *bona fide* holders. See L. R. A 1915A, 916, notes."

As I see it, under Section 17 of Article XII of our Constitution, the power to issue school district bonds *does not come into existence* until the approving vote of the electors is had as required by that section. The language of the constitutional provision is: "The Legislature may provide for special tax school districts to issue bonds * * * whenever a majority of qualified electors thereof who are freeholders shall vote in favor of the issuance of such bonds," etc. (Italics supplied.) So the power to issue does not vest in the taxing unit until it is authorized by an election in which a majority of the qualified electors vote in favor of the proposed issuance of bonds. It is well settled that *estoppel does not create power* where power did not exist, and it follows that if, as was alleged by the respondent here, no election was held as required by the Constitution, the recital in the bonds that such an election was held does not estop the respondent board of public instruction from denying the fact, nor can such recital give validity to bonds issued entirely without power or authority.

There is a distinction between the effect of violation of a constitutional provision and of a statutory provision. Thus in Dixon County v. Field, 111 U. S. 83, 28 L. Ed. 360, 4 S. C. 315, it was held that where there is no power conferred by the Constitution to issue bonds in excess of

10% of the assessed valuation in the county, no recital involving the amount of the assessed taxable valuation of the property to be taxed by the payment of the bonds could take the place of the assessment itself or estop the county. To like effect was the decision in Lake County v. Graham, 130 U. S. 674, 32 L. Ed. 1065, 9 S. 654. The 7th and 8th headnotes in the last cited case read as follows:

"7. Where the standard of validity is created by the Constitution and in that standard two factors are to be considered, one the amount of assessed value, and the other the ratio between that assessed value and the debt proposed, these being exactions of the Constitution itself, it is not within the power of a Legislature to dispense with them, either directly or indirectly, by the creation of a ministerial commission whose finding shall be taken in lieu of the facts.

"8. Where the Legislature, being the source of exaction, has created a board authorized to determine whether such exaction has been complied with, its finding is conclusive as to a *bona fide* purchaser."

See also Sutliff v. Lake County, 147 U. S. 230, 37 L. Ed. 145, 13 S. C. 318, which is to like effect; also Hayes v. Holly Springs, 114 U. S. 120, 29 L. Ed. 81.

In Hedges v. Dickson County, 150 U. S. 182, 37 L. Ed. 1044, 14 S. C. 71, which involved a proceeding in equity by the holders of the bonds invalidated by the decision in the Dickson County case invoking the aid of equity to enforce the bonds issued to the extent that they did not exceed the debt limit, it was held that the bonds were absolutely void, and hence unenforceable in equity. In that case it was held that recitals in bonds issued under legislative authority may estop a municipality from disputing their authority as against a *bona fide* holder for value, but when such bonds are issued in violation of a constitutional pro-

vision, no such estoppel can arise by reason of any recital contained in the bonds. However, the contrary seems to have been held by the same court in Gunnison County v. Rollins, 173 U. S. 255, 43 L. Ed. 689, 19 S. C. 390, and also in Chaffee County v. Potter, 142 U. S. 355, 35 L. Ed. 1040, 12 S. C. 216.

As was pointed out in State, *ex rel.* Havana State Bank, v. Rodes, 115 Fla. 259, 151 So. 289, it is quite generally held that recitals in negotiable public securities, where certain officers have authority to issue bonds on the performance of certain conditions precedent named in a valid statute, and the power is vested in them to determine whether the conditions have been complied with, and they do so determine and recite, their decision that the conditions have been complied with is final and conclusive on the issuing authority. As was said in that case: "Behind a recital of acts and · proceedings importing validity of negotiable county, district or municipal bonds, a *bona fide* holder for value is not bound to look, except for legislative authority." However, we were not dealing in that case with a constitutional requirement as we are here. A like observation might be made with reference to the case of Crawford v. State, 110 Fla. 301, 149 So. 340.

In the Crawford and Havana State Bank cases the Court dealt with a situation in which the Legislature could prescribe or dispense with the requirements claimed not to have been observed in issuing the bonds, but here we are dealing with a constitutional condition precedent to the existence of power to issue bonds, which no Act of the Legislature, and no act or proceeding referable solely to its authority, can effectively dispense with. To say that these bonds are valid because of any act or proceeding of the board of public instruction, done and had under authority

delegated by the Legislature, is to say that the power to vitalize bonds issued in defiance of the Constitution is vested in the Legislature. To so hold would be to hold that the constitutional policy of a sovereign State as expressed in its Constitution with reference to the creation of bonded indebtedness by school districts could be nullified by legislative authority or by false recitals placed in the school district bonds. For, if the allegations of the return of the respondents in this case are true, the recitals in the bonds were not true, in the respect referred to and hence the bonds were void *ab initio;* nor could a validating decree rendered in a statutory proceeding cure such violation of the Constitution. I think, therefore, that the petition for rehearing should be granted.