54 So.2d 370 (1951)
CHASE et al.
v.
CITY OF SANFORD et al.
Supreme Court of Florida, en Banc.
December 7, 1951.
*371 Hull, Landis, Graham & French, DeLand, Fred R. Wilson, Sanford and J. Compton French, DeLand, and Murray W. Overstreet, Kissimmee, for appellants.
A. Edwin Shinholser, Garland W. Spencer, Sanford, for appellee.
ROBERTS, Justice.
This is an appeal from a final decree entered in bond validation proceedings instituted in the court below by the City of Sanford in connection with the issuance of revenue bonds for the construction and operation of port terminal facilities by the city. The appellants, who are citizens and taxpayers of the city, intervened in the proceedings and filed their answer, attacking the validity of the bond issue on numerous grounds. The State Attorney also filed an answer, alleging the invalidity of the proposed bond issue.
The lower court was of the opinion that the city's petition for validation and the exhibits appended thereto showed conclusively, as a matter of law, that the bond issue and the enabling legislation were impervious to the attacks made upon them by the appellants and the State Attorney, and that the question of the feasibility of the project for which the bonds were to be issued was exclusively within the province of the legislature and the city officials to determine, so *372 that no factual issue was there presented. The court thereupon granted the city's motion to strike the appellants' Answer, dismissed the State Attorney's Answer, and entered its final decree validating the bonds. The appellant-intervenors have appealed from such final decree.
The bond issue here in question was authorized under the provisions of a Special Act, being Chapter 26466, Laws of Florida, Acts of 1949, Ex.Sess., and of a resolution of the City of Sanford passed and adopted pursuant to such special legislative authority, being Resolution No. 790. Under such enabling legislation, the city was authorized to issue bonds in the aggregate amount of $350,000 in denominations of $1,000 each, maturing serially over a 30-year period with interest at the rate of three and one-half percent per annum. It was provided therein that the bonds were to be payable solely from a special fund, composed of the net revenues from the operation of the port terminal itself and the net proceeds of the city's parking meter revenues, and that the city's taxing power was not and should never be obligated for the payment of the bonds.
The bond issue is attacked by the appellants on numerous grounds, but we think the principal question here is whether or not the provisions obligating the net proceeds of the city's parking meter revenues to the servicing of the port terminal bonds are valid.
In 1946, the City of Sanford by Ordinance No. 397 adopted the use of parking meters as a regulatory measure to control and regulate street traffic and parking in the city. It was expressly stated in the ordinance that the charge made for the use of the meters was to cover the cost of supervision, operation and replacement thereof, and it is not here contended that such ordinance was enacted as a revenue-producing measure and in compliance with the constitutional and statutory requirements for the exercise of the taxing power by a municipality.
The mere fact, however, that some revenue might result to the city from the operation of the parking meters does not, ipso facto, classify the charge as a tax; Cassidy v. City of Waterbury, 130 Conn. 237, 33 A.2d 142; and many decisions may be found in which ordinances authorizing a city to apply the revenue from parking meters not only to the narrow and restricted purpose of the mere installation, operation and maintenance of the meters, but also to the broad purposes of general traffic control, have been upheld as a valid use of revenues derived from the exercise of the city's police power. See Hickey v. Riley, 177 Or. 321, 162 P.2d 371; Wilhoit v. City of Springfield, 237 Mo. App. 775, 171 S.W.2d 95. This court has heretofore approved the use of parking meter revenues for such broader purposes, in State v. City of Miami Beach, Fla., 47 So.2d 865.
But counsel for the City has cited no case  and our independent research has revealed none  in which it has been held that revenue collected as an incident to the regulation of traffic and parking through the use of parking meters may be obligated to a use completely unrelated to the general problem of traffic control; nor is the decision of this court in State v. City of Daytona Beach, Fla., 42 So.2d 764, authority for the diversion here contended for by the city. In the Daytona Beach case, the city proposed to issue street paving bonds to be serviced by a utilities service tax, but with a provision authorizing the city to make up any deficiency in the tax fund out of the revenues from the city's parking meters. The paving of streets is not completely unrelated to the regulation and control of traffic within a city; moreover, the use of the parking meter revenues was clearly a remote contingency, dependent upon whether the utilities tax was entirely adequate, and there was no obligation on the part of the city to maintain the parking meters throughout the life of the bonds. We do not, then, feel that the City of Daytona Beach case is compelling authority for the use of the parking revenues here sought to be made.
It appears from the minutes of the meeting of the City Commission of Sanford at which the proposed bond issue was approved, *373 that there is some question as to whether the port terminal will be a profitable venture, at least for the first few years of its existence. Thus, the proceeds of the parking meters might well be the principal fund from which to service the bonds; and if such proceeds so far exceed the amount required to pay the cost of supervision and maintenance of the meters as to justify relying on them as the sole source of revenue for servicing the bonds, then such charge might be subject to attack on the ground that it is, prima facie, grossly disproportionate to the sum required to pay the cost of regulation and, as such, an arbitrary, oppressive, and unreasonable exercise of the police power. See Flynn v. Horst, 356 Pa. 20, 51 A.2d 54; Maxwell & Quinn Realty Co., Inc., v. City of Columbia, 193 S.C. 260, 8 S.E.2d 339; 44 Am.Jur., Licenses, Sec. 44, page 367.
Moreover, under the terms of the enabling legislation and the bonds, the city is required to maintain the existing parking meters at their present locations and to maintain the present system of rates and charges, as long as the port terminal bonds remain unpaid. We do not think that the city may thus contract away its authority, under the police power, to regulate traffic. As stated in 11 Am.Jur., Constitutional Law, Sec. 254, page 983: "It is a fundamental principle of constitutional law that in matters relating to the police power, each successive legislature is of equal authority. A legislative body cannot part with its right to exercise such power; it inherently has authority to use the power again and again, as often as the public interests may require. Hence, one session or body of the legislature may not by any contract with an individual restrain the power of a subsequent legislature to legislate for the public welfare. The governmental power of self-protection cannot be contracted away. Neither can the exercise of rights granted nor the use of property be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury."
The case of State v. City of Miami Beach, Fla., 47 So.2d 865, is not authority for the city's contention that it is authorized to covenant to maintain, unchanged, its entire existing parking-meter system for a period of thirty years. It was held in the City of Miami Beach case that a covenant by the city to fix and maintain rates and collect charges for the use of its off-street and on-street parking facilities sufficient to pay the principal and interest on bonds issued for the purpose of acquiring, equipping, maintaining and improving existing and additional parking facilities was proper. The off-street and on-street parking facilities maintained by the City of Miami Beach are part of one general regulatory scheme to control and regulate the tremendous volume of traffic there, and the cost of improving and extending which necessitated the issuance of the bonds there involved. The City of Sanford cannot, then, rely on the City of Miami Beach case as authorizing its covenant not only to maintain its present system of rates and charges but also to maintain its present system of traffic control until the entire amount of the bonds is paid off, and which bonds were issued for a purpose wholly unrelated to the broad purposes of general traffic control and, moreover, for a purpose for which the city's police power could not be exercised; and we think such covenants are clearly unenforceable. As stated in 43 Am.Jur., Public Securities and Obligations, Sec. 161, page 399: "Municipal bonds, even when negotiable, are subject to certain defenses, and under facts calling for operation of such defenses, they are no more binding upon the municipality in the hands of the assignees of the persons to whom they have been issued than they would have been in the hands of the original purchaser."
It might be mentioned that the bonds here involved, even though it is expressly stated therein that they "shall be and constitute negotiable instruments for all purposes under the law merchant and the Negotiable Instrument Law of the State of Florida," cannot be held to have all the elements of negotiability. They did not contain a promise to pay unconditionally and at all events but, on the contrary, were payable solely from a special fund which *374 might or might not be adequate, and they were not, then, "negotiable" for all purposes within the meaning of the Negotiable Instruments Law, Chapter 674, Florida Statutes, F.S.A. § 674.01 et seq. See 43 Am.Jur., Public Securities and Obligations, Sec. 162, page 400. Moreover, if they were, in fact, the unconditional obligation of the city so that its taxing power might ultimately be called upon for the payment of the obligation, then their issuance would not be authorized without first obtaining the approval of the freeholders, as required by Section 6 of Article 9 of the Constitution of Florida, F.S.A.
Since we have held that the provisions of the bonds and the enabling legislation, respecting the obligation of the net proceeds of the parking meter revenues to the payment of the proposed bonds, are invalid and unenforceable, it is not necessary to decide the question of whether the taxing power of the City of Sanford was indirectly obligated for the payment of the bonds, under the contention of the appellants that the City will be forced to purchase replacement parking meters from the general tax funds of the City.
We have also examined the titles of the enabling legislation and the notice of intention to apply for the passage of the Special Act, Chapter 26466, and find no error. The contention that the notice was insufficient to show that the city would be authorized under the terms of the Act to issue long-term negotiable bonds is not well taken since, as heretofore noted, the bonds were not strictly "negotiable" within the meaning of the Negotiable Instruments Law; and the notice was otherwise sufficient within the rule stated in State ex rel. Watson v. City of Miami, 153 Fla. 653, 15 So.2d 481, 483, that "So long as such laws as are finally enacted accord in substance and purpose and are germane to and within the scope of the subject-matter of the published notice, the organic provision, in this particular, has been complied with."
Nor do we think that the allegations of appellants' answer were sufficient to state a case of fraud, corruption, improper motives or influence, plain disregard of duty, or gross abuse of power, on the part of the city officials so as to justify this court in holding the bond issue invalid. This court has many times held that it will not inquire into the propriety, economy and general wisdom of such acts. See Town of Riviera Beach, v. State of Florida, Fla., 53 S.Ct. 828.
The questions presented by appellants relating to the sale of the bonds below par by the city are not properly determinable on this appeal, since we are concerned only with the validity of the bond issue.
We hold, then, that the provisions of the bonds respecting the obligation of the parking meter revenues to their payment are invalid. We do not decide whether the provisions for servicing the bonds from the parking meter revenues are so blended and interwoven with the other provisions for their payment as to constitute a single indivisible consideration, so that the invalidity of the parking meter provisions will invalidate the entire bond issue, since this question is not here presented.
For the reasons stated, the final decree is reversed and the cause remanded for further proceedings consistent herewith.
SEBRING, C.J., and TERRELL, CHAPMAN, THOMAS, HOBSON, JJ., and JONES, Associate Justice, concur.