HOBSON, Justice
(concurring specially)-
I> thoroughly concur in the opinion of Mr. Justice SEBRING in the present case and I should like only to add a few considerations which seem apposite to the case at bar.
The opinion prepared by Mr. Justice MATHEWS would deny all interest on defaulted bonds and defaulted coupons, thus removing all incentive on the part of the issuing unit to meet the specified maturity dates and leaving the bondholder to his remedies in court.
Insofar as said opinion apparently would hold that such payment is prohibited by the direction of Section 9 of Article XII of the F.S.A.Constitution that the funds therein provided for shall be used “solely for the support and maintenance of public free schools”, it seems to me to be just as logical to read this section as prohibiting the use of any money at all by a Board of Public Instruction for debt service, which woulii amount to a legalized fraud on the bondholders. But such interpretation was foreclosed by this court in State v. Board of Public Instruction for Dade County, 126 Fla. 142, 170 So. 602, wherein we adhered to our former holdings that county school funds provided for by Section 8 of Article XII of the F.S.A.Constitution, under which the bonds before us were issued, could be used to service obligations sold to finance past debts lawfully incurred — i. e., that the Constitutional provision invoked did not force the school authorities to operate solely on a cash basis. Note that in that case, in validating the bonds, we laid some emphasis upon the fact that it was not shown that any budgetary requirements would be violated by the issuance of the bonds. In the case *775 before us no contention is made by the Board that it cannot pay because insufficient money is available to it for debt service.
In Chapters 11073 and 11074, Laws of 1925, the legislature provided that the interest and sinking funds should be used “for the sole purpose of paying the interest due on said bonds * * * and retiring the same at their maturity”. I cannot read into this much-employed statutory language anything deeper than a direction that the funds will be used only for lawful debt service, for the same reasons expressed in my opinion in Board of Public Instruction of Sumter County v. Wright, Fla., 76 So.2d 863. I can find no indication in any of the acts under which the bonds were issued of a disposition on the part of the legislature to remove either bonds or coupons from the operation of the law merchant. In Board of Public Instruction for Dade County v. State ex rel. Tanger Inv. Co., 121 Fla. 703, 164 So. 697, 698, we said that special tax school district bonds are “in all respects analogous to ordinary municipal bonds”. No distinction of substance can be made in the case before us.
Nor have we ever applied to obligations of this type the principle that a county is not liable for interest in the absence of statute or express agreement, announced in Duval County v. Charleston Engineering & Contracting Co., 101 Fla. 341, 134 So. 509, and National Bank of Jacksonville v. Duval County, 45 Fla. 496, 34 So. 894. In the Charleston Engineering case we held that the county was not liable for interest on an engineering contract which did not provide, for the payment of any interest. In the National Bank case we held that an ordinary county warrant, given in payment of an obligation, in the manner of a check, did not bear interest. The case of Jefferson County v. Hawkins, 23 Fla. 223, 2 So. 362, which holds that defaulted coupons bear interest, was distinguished in the opinion, the court stating that in the Hawkins case “[t]he question relating to interest upon county warrants was not involved or decided, and, in view of the essential differences in the nature of coupons and warrants, they do not necessarily rest upon the same basis”. 34 So. 894, 895. For an illuminating discussion by this court, speaking through Mr. Justice Terrell, of the difference between warrants and bonds see Marshall v. State ex rel. Sartain, 88 Fla. 329, 102 So. 650.
Finally, I find it necessary to consider briefly the subject of negotiability. Appellant allows in its brief that the bonds issued under Chapter 11073, supra, are negotiable because the act declares that they shall be, but contends that the bonds issued under Chapter 11074 are not negotiable because that chapter does not contain the same declaration, and since they are payable from a “limited fund” their defaulted coupons do not bear interest.
Declarations as to negotiability or the lack thereof are generally ineffective. See Chase v. City of Sanford, Fla., 54 So.2d 370. The acid test of negotiability is the declaration on the face of the instrument. To be negotiable an instrument must contain, on its face an unconditional promise to pay, and a promise to pay out of a particular fund, and only out of that fund, is not unconditional because it does not pledge the general credit of the maker.
Both series of bonds here in suit, issued under Chapters 11073 and 11074, contained upon their faces the declaration appearing in the opinion of Mr. Justice Sebring, i. e., that for their payment "the full faith, credit and resources of the Board of Public Instruction for the County of Putnam are hereby irrevocably pledged”. (Emphasis added.) They also declared their statutory authority and that they had been ratified by a majority vote of the freeholders. The “tax anticipation notes” sued upon declared on their faces that they were issued “under the authority of and in full compliance with Section 458 of the Revised General Statutes of Florida of 1920, in anticipation of the receipt of taxes for the said year, [referring to the scholastic year beginning July 1, 1929] which said taxes and all other revenues, including all funds derived from gasoline taxes, and all other resources of the said Board of Public Instruction are hereby irrevocably pledged to the payment *776 hereof’. (Emphasis added.) Certainly this was and is a pledge of the general credit of the Board.
The bonds issued under Chapters 11073 and 11074 and the “tax anticipation notes” are to be distinguished from revenue bonds, which are made payable solely from a special fund and do not pledge general credit. Compare State v. Dade County, Fla., 70 So.2d 837 (bonds for enlargement of airport, payable from revenues therefrom); Chase v. City of Sanford, supra, Fla., 54 So.2d 370 (bonds to build and maintain port terminal, payable from revenues therefrom and from parking meter revenues); City of Orlando v. State, Fla., 67 So.2d 673 (street improvement certificates, payable from proceeds of special assessments against improved property); Gate City Garage, Inc. v. City of Jacksonville, Fla., 66 So.2d 653 (bonds for acquisition of off-street parking facilities, payable from revenues therefrom and parking meter revenues).
In Chase v. City of Sanford, supra, the bonds “did not contain a promise to pay unconditionally and at all events * * 54 So.2d at page 373. In Gate City Garage v. City of Jacksonville, supra [66 So.2d 662], the bonds contained the following declaration :
“ ‘Neither the Bonds nor coupons shall be or constitute an indebtedness of the city of Jacksonville, within the meaming of any constitutional, statutory or charter limitation of indebtedness, but shall be payable solely from the revenues of the Parking System, including both off-street parking facilities and metered on-street parking facilities, as herein provided. No holder or holders of any Bond issued hereunder, or of any coupon appertaining thereto, shall ever have the right to compel the exercise of the ad valorem taxing power of the City, or taxation in any form of any real or personal property therein to pay said Bonds or the interest thereon.’ ” (Emphasis added.)
Clearly these “special fund” cases are distinguishable from the case before us.
Other “special fund” cases are cited in the annotation, “Negotiability of municipal bonds as affected by reference to fund from which they are to be paid”, 42 A.L.R. 1027, 1030. The annotator continues on page 1031, however, as follows:
“But it is not to be adduced from any of the cases above, that the mere fact that the enabling act provides for the payment out of a particular fund renders .bonds issued under it non-negotiable. For, if they are the general and unrestricted obligations of the body corporate issuing them, and not payable solely out of a particular fund, although a particular fund is provided by the enabling act for their payment, they do not come within the description of the Negotiable Instrument Act as non-negotiable paper, for, as said by a learned court, that act ‘especially provides that “an unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with (1) an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount.”’ Commissioners of Cleveland County v. Citizens’ Nat. Bank of Gastonia, 1911, 157 N.C. 191, 72 S.E. 996.”
As for the contention of appellant that the fund from which payment is to be made is “special” or “limited” because current school operating expenses have a claim against it paramount to debt service, it would be a novel principle indeed if we were to hold that an instrument is not negotiable, although on its face it pledges the maker’s general credit, because some obligee other than the bondholder may exert a prior claim upon the funds of the maker. Of course funds cannot be diverted from the purposes specified by constitutional mandate, and if the monies available for debt service are insufficient to satisfy the outstanding obligations of the Board, this is a matter to be pleaded and proved in a proper case. Moreover, equities growing out of circumstances surrounding the acquisition of a negotiable instrument may be *777 pleaded and proved, to call into question the status of the holder thereof as a bona fide purchaser, but no issue which may thus be created has been held to threaten the negotiability of the instrument itself. At the most, it can only make available to the issuing unit certain defenses against the particular holder which could not otherwise be raised.
To be sure, creditors are held to notice of constitutional and statutory limitations, State v. Board of Public Instruction for Levy County, 143 Fla. 212, 196 So. 452. But even this rule is not to be taken without qualification. In the Levy County case, the validation of refunding bonds was refused, when it was made to appear conclusively to the court that the proposed levy for debt service would not leave enough for current school operation. In that case, as in most validation cases, the court had all the facts of the Board’s financial standing before it, along with the facts of the proposed issue. In Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, the bonds were enjoined before they were sold, even though they had been validated, because they showed on their face that they were unconstitutional. With these cases compare Board of Public Instruction for Dade County v. State ex rel. Tanger Inv. Co., supra, 121 Fla. 703, 164 So. 697, where, after validation and sale, mandamus was issued against the Board over its contention that no election was held in accordance with the Constitutional requirement. On the same point, compare the cases of Gunnison County Commissioners v. E. H. Rollins & Sons, 173 U.S. 255, 19 S.Ct. 390, 43 L.Ed. 689, and Chaffee County Commissioners v. Potter, 142 U.S. 355, 12 S.Ct. 216, 35 L.Ed. 1040, with the Weinberger case, supra. But I do not consider this subject properly before us because, as aforesaid, the Board does not even now contend that payment would violate the Constitutional or statutory mandate, under which it functions, because of insufficiency of funds to meet its obligations.
SEBRING, J., concurs.